BARRY, Judge.
Manuel Rosado was convicted by bench trial of receiving a stolen car valued at $4,000 and sentenced to two years in Parish Prison[1]. He contends there is no evidence of scienter, an essential element of the crime under LSA-R.S. 14:69[2], and argues the trial court erred in denying his motions for a directed verdict and acquittal.
It was established that a white, 4-door 1978 Chrysler owned by Arthur Rojas was stolen from his used car lot sometime over the weekend ending Monday, February 15,1982. Rojas testified there was only one set of keys to the car which was in his briefcase when the car was stolen.
On Sunday, February 14, 1982 Viola Smith, a neighbor of defendant, observed him driving a ear she had never seen before — a 1978 white 4-door Chrysler and complained to the defendant when he parked the car in front of her house. Marlene Wheeler, another neighbor, observed defendant that same day working underneath the hood of the car, loosening screws with a wrench. The next day Ms. Smith also noticed defendant working under the hood of the car which was still parked, despite her objection, in front of her door. Marjorie Wheeler, also a neighbor, testified she saw defendant remove the motor from the car on Monday, February 15,1982. According to Ms. Wheeler, a white man arrived in a white truck and he and defendant put the motor in the truck and the man drove away.
The following day, Tuesday, February 16, 1982, Ms. Smith noticed the motor was gone from the car and there was oil all over the ground in front of her door. She went to defendant’s house and told his brother to have defendant move the car at once or she would call the police. An hour later she reported the car as abandoned to the New Orleans Police Department.
The police investigation disclosed the stripped car was the same one stolen from Mr. Rojas’ used car lot. Based on the information given by defendant’s neighbors, the police obtained a warrant for defendant’s arrest. Defendant was not at the scene when the police arrived and was not seen thereafter in the neighborhood by any of the witnesses.
At trial defendant testified he was unaware the car was stolen. He said he was a mechanic and occasionally worked on cars in the street in front of his house. His account of the incident was that he’d been working on his own car when a black man he’d never seen before drove up in the white Chrysler and asked defendant to remove the motor for $150. The stranger left the keys with defendant for several days during which defendant road tested the car. The man then returned and took the keys, leaving the car with defendant so that he could take out the motor, which had a “miss.” The stranger told defendant he was going to have the motor overhauled and then replace it in the car. The man did not volunteer his name, address or phone number when he entrusted his car to defendant and defendant testified, “I ain’t about to ask him” his identity. Defendant stated that after he had disconnected the motor, the black man returned in a blue truck and took the motor with him, leaving the stripped car in front of defendant’s residence. The man never came back for the car and, according to defendant, left him “holding the bag.” Defendant admitted a prior conviction for theft of an outboard motor.
*806 Defendant’s version of the time sequence of these events is jumbled. He did not mention having the car keys until the prosecution asked if the car was “hot-wired.” Defendant then explained the stranger had given him the car keys to road test the car. He initially indicated he road tested the car while the alleged owner was nearby, testifying that, although he didn’t know where the man went while he (defendant) was out driving the car, the man “was waiting but I think he took a walk somewhere.” Later defendant admitted he’d been road testing the car “for a couple of days” before the stranger returned. Similarly, defendant testified the man delivered the car to him on Sunday night, February 14,1982, that he had the car and the keys for “several days” while he road tested it, and it took him a day and a half to disconnect and remove the motor. Defendant testified he rented a lift and removed the motor on Tuesday, February 16, 1982, [the day on which the police found the stripped car] which was less than two days after he said he first received the car.
The State’s witnesses contradicted the defendant’s story in many respects. None of the neighbors saw defendant working on any cars except the stolen Chrysler during the 2-3 months he lived in the neighborhood. The neighbors also said the street where the defendant was supposedly working on his own car when the stranger drove by in the Chrysler is short and dead-end with no through traffic. Contrary to defendant’s description of a black stranger in a blue truck, Ms. Wheeler stated the man who picked up the motor was white, drove a white truck, and had been in the neighborhood before. Defendant’s brother testified he saw a black man bring the car to defendant, but did not see him return to retrieve the motor.
Defendant argues he should have been granted a directed verdict or found not guilty because there was no evidence of an essential element of the crime, i.e., that he knew or had good reason to know the automobile was stolen.
In State v. Walker, 350 So.2d 176, 177 (La.1975) the court held that the crime of receiving stolen things consists of four separate elements which must be proven:
(1) the intentional procuring, receiving or concealing;
(2) of anything of value;
(3) which has been the subject of any robbery or theft;
(4) under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.
Defendant does not challenge proof of the first three elements, but claims the State failed to prove the fourth. In Walker, supra at 178, the court held with regard to the scienter requirement:
“... R.S. 14:69 does not create any presumptions and the State ‘must prove that the accused actually knew or had good reason to believe that the property was stolen before a conviction under R.S. 14:69 can be obtained.’ ” (Emphasis supplied.)
In State v. Graham, 422 So.2d 123, 129 (La.1982), the court articulated a dual test to determine the sufficiency of evidence in cases where, as here, the State’s proof rests entirely on circumstantial evidence:
The Due Process Clause of the Fourteenth Amendment requires this court to review the evidence upon which a criminal conviction is based to determine whether it is minimally sufficient. A defendant has not been afforded due process, and his conviction cannot stand, unless, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the state proved the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Additionally, we are governed by our statutory rule as to circumstantial evidence: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence. R.S. 15:438.
*807 Defendant argues the circumstances under which he acquired the stolen ear were susceptible of several hypotheses other than the inference he knew or suspected the car was stolen. Defendant clings to his story that he was hired by the black stranger to remove the motor and he would not have worked on the car in broad daylight in a populated area if he had anything to hide. These contentions are not a hypothesis of innocence, but merely circumstances tending to show lack of guilty knowledge. Because the street in question is a small cul-de-sac (without through traffic), defendant may well have thought himself safe working on the stolen car in that location.
In oral reasons for judgment, the Judge told defendant:
I thought your story was incredible— incredible. You don’t have to have some basic knowledge and understanding about dealing with automobiles to understand that you would not go through all the extra trouble of getting a car to get a motor out of it when you have the motor in the car and it ran good enough to bring it anywhere you wanted to bring it. So, that was — I found that to be totally incredible.
Our review of the record shows defendant’s story was far-fetched, inconsistent in critical particulars, and contradicted in its most crucial points by unbiased witnesses. Defendant testified, for instance, that a black man he never saw before drove by while he was working on his car and hired him on the spot to remove the motor from the Chrysler for $150.00. The man was then going to have the motor picked up and taken to a garage to be overhauled. Yet two independent witnesses, who lived across the street from defendant, testified they never saw defendant working on a car. The obvious fact that the street is a dead end without through traffic makes it unlikely that strangers to the neighborhood would “drive by” where the defendant was supposedly working on his car.
Defendant further testified the stranger left him the car and keys (despite the fact defendant did not know him), although the car’s owner said there was only one set of keys which he had. Defendant also said he “road tested” the car which means the car could have been driven to a garage to have the motor removed.
Defendant relies on Walker, supra, but that case is distinguishable because there the State presented no evidence to show how the defendant acquired a stolen gun. By contrast, in this case there is ample evidence of the defendant’s guilty knowledge. There is no basis to discredit the ear owner’s testimony which indicates the car must have been “hot-wired” whenever defendant acquired and drove it. This should have put defendant, a self-proclaimed mechanic, on notice the car was stolen. Defendant disappeared from the neighborhood immediately after the police located the stolen car, yet admitted he knew the police were looking for him and evaded arrest for four months. Defendant’s version of what happened is simply not believable and does not lend itself to any reasonable hypothesis of innocence. All of the circumstances clearly indicate the defendant knew or had excellent reasons to believe the automobile was stolen.
Under the standard articulated in State v. Graham, supra, we find that, taking the facts in the light most favorable to the State, a rational trier of fact could have concluded that the State proved the essential elements of the crime beyond a reasonable doubt. Applying Louisiana’s statutory test, we also find that, assuming every fact to be proved that the evidence tends to prove, every reasonable hypothesis of innocence has been excluded. Defendant’s conviction is therefore AFFIRMED.
AFFIRMED.

. In the trial court defendant assigned as error the excessiveness of his sentence but, having failed to brief or argue that issue, it is deemed abandoned. State v. Mattheson, 407 So.2d 1150 (La.1981); State v. Blanton, 352 So.2d 586 (La.1976); State v. Carlisle, 315 So.2d 675 (La.1975).

. LSA-R.S. 14:69 provides, in pertinent part, that:
Receiving stolen things is the intentional procuring, receiving or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses.