438 So.2d 1303 (1983)
STATE of Louisiana, Plaintiff-Appellee,
v.
Ted Brian HONEYCUTT, Defendant-Appellant.
No. CR83-381.
Court of Appeal of Louisiana, Third Circuit.
October 12, 1983.
Writ Denied December 9, 1983.
James Miguez, Carl A. Leckband, Jr., Miguez & Leckband, Lake Charles, for defendant-appellant.
Leonard K. Knapp, Jr., Dist. Atty., F. Wayne Frey, Asst. Dist. Atty., Lake Charles, for plaintiff-appellee.
Before STOKER, LABORDE and KNOLL, JJ.
KNOLL, Judge.
The defendant, Ted Brian Honeycutt, was convicted by a six member jury of receiving stolen things valued at $10,000, a violation of R.S. 14:69. The defendant filed a motion for a new trial on the ground that the verdict was contrary to the law and the evidence. The motion was denied and the defendant was sentenced to three years in the custody of the Department of Corrections, suspended, with five years supervised probation, subject to the conditions provided in LSA-C.Cr.P. Art. 895, and two special conditions: (1) restitution in the sum of $5,000 to the owner of the pipe and (2), pay a fine of $1,000 and court costs. In default thereof, the defendant was to serve six months in the parish jail.
On this appeal the defendant contends the trial judge erred in denying his motion for a new trial in that the verdict is contrary to the law and the evidence.

FACTS
In January of 1981, Power Rig Drilling Company of Lafayette, closed down a drilling rig in Lake Charles. Thirty-two lengths of drilling pipe were left at the site. On or about January 23, 1981, Mr. J.C. Goodrich, a vice-president of Power Rig Drilling Company, returned to the site and discovered that the thirty-two (32) lengths of pipe were missing.
*1304 In March of 1981, Mr. Walter P. Romero went to Longview, Texas, to hard band (a type of welding) some drilling pipe for Ram Pipe Company. While there, he noticed certain drill pipe that already had his application of hard band. He recognized this pipe due to a unique hard banding process that he had used. When he returned to Louisiana he reported this to Power Rig officials. Investigation by the Calcasieu Parish Sheriff's Office and the FBI traced the pipe back to the defendant.
The defendant, a self-employed independent truck driver, testified that sometime during January of 1981, he was returning in his truck to his home in Lake Charles from a truck terminal in Houston, Texas. His truck was empty. He was travelling with his wife who was in the sleeper compartment in the rear of the cab of the truck. He stopped at a rest area so his wife could use the restroom. An unidentified black male truck driver approached the defendant and told him that his (the black truck driver's) truck was overloaded and asked the defendant to help him by carrying some pipe through a weigh station to avoid being fined. Defendant agreed for $100. Some of the pipe was loaded on defendant's empty truck. After passing through the weigh station they met at the Ranch Truck Stop in Lake Charles. They tried to transfer the pipe back on the black man's truck but were unable because defendant's truck was lower and the pipe was too heavy.
Defendant testified that the black driver telephoned his office and was instructed to call back later for instructions during which time he described the pipe as junk pipe. The defendant commented that he had been looking for some pipe to build a shop. Before the black driver went back to call his office, the defendant requested that he ask his office if they would be willing to sell him the pipe for $300. When the black driver returned from making the call, he told the defendant he could have the pipe for $300. The defendant paid him $200 in cash, plus a credit for the $100 the black driver was suppose to pay the defendant for carrying the pipe through the weigh station.
The defendant brought the pipe to his father-in-law's house where it remained for approximately three months, when the defendant sold the pipe to Russell G. Pousson for approximately $3,900. Mr. Pousson withheld a finder's fee of 10% and gave the defendant a net balance of $3,600. Mr. Pousson in turn sold the pipe for $9,900 to Ram Pipe Company.

ASSIGNMENT OF ERROR
The defendant contends that the State failed to prove the offense charged. At the time of the offense, the crime of receiving stolen things was defined in LSA-R.S. 14:69 as:
"... the intentional procuring, receiving, or concealing of anything of value which has been the subject of any robbery or theft, under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses."
Thus, the crime consists of four elements: (1) the intentional procuring, receiving, or concealing (2) of anything of value (3) which has been the subject of any robbery or theft (4) under circumstances which indicate that the offender knew or had good reason to believe that the thing was the subject of one of these offenses. State v. Walker, 350 So.2d 176 (La.1977). The defendant claims that the fourth element was not met by the State.
In reviewing the sufficiency of evidence, Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) and LSA-R.S. 15:438 are used as guidelines. State v. Rosado, 431 So.2d 804 (La.App. 4th Cir. 1983). The Jackson v. Virginia standard is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime beyond a reasonable doubt. State v. Rosado, supra. R.S. 15:438 provides:
"The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, *1305 it must exclude every reasonable hypothesis of innocence."
The defendant claims he did not know the drill pipe was stolen. He further claims that because of his limited education (eighth grade) he could not determine whether the drill pipe was junk pipe or usable equipment. We find the record supports that the defendant knew or had good reason to believe that the drill pipe was stolen.
The defendant had been an independent truck driver since 1975. As a trucker, he had hauled drill pipe before for Conoco and several other companies.
In the defendant's account of acquiring the pipe, he did not know the name of the man who sold him the pipe and did not get a receipt. He did not know what company the man was working for and did not notice any company name or emblem on the man's truck. His wife, who was travelling with him, did not see or hear anything. The defendant supposedly wanted the pipe to build a shop which was never built. After acquiring the pipe, he unloaded it at his father-in-law's house where it remained for three months until he sold it for $3,600.
The purpose of the phrase "had good reason to believe" is to preclude the assertion of naivete as a defense. State v. Courtney, 296 So.2d 807 (La.1974). We find the defendant's experience as a trucker, the circumstances surrounding his purchase of the drill pipe for $300 and his subsequent sale of the pipe for $3,600, shows that he either knew or had good reason to believe the drill pipe was stolen.
After viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could conclude that the State proved the essential elements of the crime, and the evidence excluded every reasonable hypothesis of innocence.

DECREE
The defendant's conviction and sentence are affirmed.
AFFIRMED.
STOKER, J., dissents and assigns written reasons.
STOKER, Judge, dissenting.
With respect, I dissent from the majority's affirmance of the defendant's conviction and sentence. I am of the opinion that his conviction should be reversed. There is no proof that defendant knew the pipe had been stolen. Therefore, a conviction had to rest on a reasonable conclusion that defendant had good reason to believe that the pipe was stolen. Regardless of suspicions, I am of the view that a rational trier of fact could not conclude beyond reasonable doubt, under the test laid down in Jackson v. Virginia, 443 So.2d 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), that defendant had good reason to believe the pipe was stolen.
The majority relies heavily on the fact that the defendant bought the pipe for $300 and later sold it for $3,600. According to the majority, this circumstance shows that the defendant either knew or had good reason to believe the drill pipe was stolen. The majority evidently concludes that defendant knew at the time he purchased the pipe that it was worth much more than $300. With respect I disagree.
Expert testimony established that the grade, and consequently the value of the pipe, could not be determined by viewing the pipe with the naked eye. With respect to pipe of this nature, special testing is required to determine its value. It was established that the value of junk pipe is whatever the going rate for junk iron is. Junk pipe is often given away, and it is not unusual to sell it for between five and ten dollars per pipe. The State merely proved that if one could determine that the pipe was of premium grade, that its value would have been considerably higher than the $300 paid for all thirty two pieces of pipe. I am unable to conclude that the price paid by defendant was so unusually low as to give the defendant good reason to believe the pipe to be stolen.
Viewing all the circumstances surrounding defendant's acquisition of the pipe, together with the circumstance that the sole explanation for the possession of stolen pipe *1306 consisted of the facts related by the defendant himself, I am unable to conclude that rational triers of fact could conclude beyond reasonable doubt that the defendant had good reason to believe the pipe was stolen. Even viewed in the light most favorable to the prosecution, i.e., for conviction, I am unable to conclude that more than strong suspicion and doubt have been proved.