799 So.2d 563 (2001)
STATE of Louisiana, Appellee,
v.
B.J.D. A Juvenile, Appellant.
STATE of Louisiana, Appellee,
v.
J.J.D. A Juvenile, Appellant.
Nos. 35,409-JAC, 35,410-JAC.
Court of Appeal of Louisiana, Second Circuit.
September 26, 2001.
*565 Scott E. McElroy, Counsel for Appellants.
Richard P. Ieyoub, Attorney General, Jerry L. Jones, District Attorney, E. Dion Young, Assistant District Attorney, Counsel for Appellee.
Before WILLIAMS, PEATROSS & DREW, JJ.
PEATROSS, Judge.
This criminal juvenile appeal arises from the Fourth Judicial District Court, Parish of Morehouse, the Honorable Larry Lolley, presiding. The juvenile defendants were charged with criminal damage to property, but were convicted of accessory after the fact to criminal damage to property. After motions to vacate were granted, the juvenile defendants were tried again and convicted of criminal damage to property and adjudicated as delinquents, from which they now appeal. For the reasons stated herein, the convictions are reversed and the sentences are vacated.

FACTS
On July 14, 2000, B.J.D. and J.J.D. ("Defendants") and R.L.[1] (all age 15), were spending the night at R.L.'s house. They went to a neighbor's house to visit a classmate, but no one was home. The three teenagers then entered the back yard and began to swim in the above-ground pool. R.L. later admitted that he cut the pool's liner with a box cutter while they were swimming in the back yard on that night. There were also two large cuts that looked like the initials "J.D."; however, R.L. testified that he did not cut the initials "J.D." in the pool's liner.
Defendants were charged with felony criminal damage to property over $500, in violation of La. R.S. 14:56(B). At the La. Ch.C. art. 854 appearance hearing, Defendants denied the allegations and were first tried together on April 18, 2001. The first witness for the state was Deputy Jamie Wallis[2], who had investigated the incident. He testified that there were several cuts in the pool's liner, two of which looked like the initials "J.D." Deputy Wallis also interviewed R.L. and Defendants. He testified that B.J.D. and J.J.D. denied any involvement in cutting the pool.
Deputy Scott Culp, who also investigated the incident, testified that R.L. did not tell him that J.J.D. or B.J.D. cut the pool's liner. He testified that the cuts in the pool's liner were about two or three feet long and less than five feet apart. According to Deputy Culp, there were a total of five cuts.
R.L. testified that he and Defendants went swimming in the neighbor's pool without permission. He admitted that he found a box cutter and cut the pool's liner three or four times, although he denied cutting the initials "J.D." He then dropped the box cutter on the bottom of the pool. R.L. later found the box cutter lying on the ground outside the pool and tossed it into the woods.
R.L. also testified that he did not tell Defendants that he had cut the pool's liner. B.J.D., however, testified that R.L. did tell him that. R.L. further testified that he neither saw Defendants cut the pool's liner, nor did he hear Defendants talk about cutting the pool's liner. He was impeached, *566 however, by his prior testimony wherein he said that Defendants did in fact cut the pool's liner. He further testified that, at some point, J.J.D. accidentally ripped the pool's liner as he was trying to get out of the pool.
The owner of the pool, Karen Smith, testified that there were two large cut areas in the pool's liner which looked like the initials "J.D." She further stated that there were several smaller cuts.
Defendants denied cutting the pool's liner, and testified that they saw R.L. cut the pool's liner with a box cutter. Defendants both saw R.L. with the box cutter prior to the pool's liner being cut, and B.J.D. testified that he told R.L. not to cut the liner. Defendants further testified that they only swam and denied doing anything else while on the premises, although they agreed not to tell anyone of the occurrence.
As previously stated, Defendants were only charged with criminal damage to property. On April 18, 2001, the trial court adjudicated B.J.D. and J.J.D. as delinquents for the crime of accessory after the fact to felony criminal damage to property, in violation of La. R.S. 14:25, even though they were not charged with that crime. Both Defendants filed motions to vacate the adjudication, asserting that Defendants were charged with criminal damage to property and that accessory after the fact was not responsive to the original charge. The motions were granted and a new trial was ordered.
The new trial was conducted on May 30, 2001. At that trial, Defendants moved to quash the retrial, arguing that finding them guilty of accessory after the fact constituted an acquittal on the charge of felony criminal damage to property and that a retrial would constitute double jeopardy. The trial court denied Defendants' motions and proceeded forward with the trial.
By agreement of counsel, the trial court took judicial notice of the testimony and evidence adduced in the April 18, 2001 trial and found Defendants guilty as principals for the crime of felony criminal damage to property.
At the dispositional hearing, the trial court ordered Defendants to serve a secure commitment of one year with the Louisiana Department of Public Safety. The one-year secure commitment was suspended, and Defendants were placed on supervised probation for a period of one year. Defendants were ordered to each pay one-third of the cost of repairing the swimming pool, $1,786.59 (R.L. previously pled guilty and was also ordered to pay one-third of the damage).

DISCUSSION

Double Jeopardy
As previously stated, Defendants were charged with criminal damage to property and tried on April 18, 2001. They were convicted, however, of accessories after the fact to criminal damage to property, which was non-responsive to the indictment. As a result, Defendants filed motions to vacate, which were granted. Since a finding of double jeopardy would technically prevent our review of the sufficiency of the evidence claim, we first discuss the double jeopardy issue.
The defense, before the new trial, made a motion claiming that the retrial would constitute double jeopardy. The Louisiana Constitution states that "[n]o person shall be twice placed in jeopardy for the same offense, except on his application for a new trial, when a mistrial is declared, or when a motion in arrest of judgment is sustained." La. Const. Art. 1, § 4. The Code of Criminal Procedure further states that "[n]o person shall be twice put in jeopardy of life or liberty for the same offense, except, when on his own motion, a new *567 trial has been granted or judgment has been arrested...." La.C.Cr.P. art. 591.
Defendants contend that they were acquitted of criminal damage to property when they were found guilty of accessory after the fact to criminal damage to property. They argue that a conviction of a lesser degree of an offense is an implied acquittal of the greater offense and that they cannot be retried for the greater offense. See La.C.Cr.P. art. 598(A). Their argument, however, has no merit in this case because the first adjudication, accessory after the fact to criminal damage to property, was not responsive and was not of a lesser degree of criminal damage to property.
A verdict is responsive if it is contained in the list of legislatively approved responsive verdicts. La.C.Cr.P. art. 814. If article 814 is silent to the verdict reached, which it is in this case, then all verdicts of guilty, not guilty or guilty of a lesser and included grade of the offense are responsive verdicts. La. C.Cr.P. art. 815. The appropriate test for determining permissible responsive verdicts for crimes not provided for in La. C.Cr.P. art. 814 is whether or not all of the elements of the lesser offense are included in the definition of the greater offense. State v. McCoy, 337 So.2d 192 (La.1976); State v. Stewart, 292 So.2d 677 (La.1974).
"Simple criminal damage to property is the intentional damaging of any property of another, without the consent of the owner... by any means other than fire or explosion." La. R.S. 14:56(A). "An accessory after the fact is any person who ... shall harbor, conceal, or aid the offender, knowing ... that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment." La. R.S. 14:25. Accessory after the fact is not enumerated as a responsive verdict to criminal damage to property, nor does the definition of accessory after the fact include the elements of criminal damage to property. Accessory after the fact, therefore, is not responsive to criminal damage to property.
The motion asserting double jeopardy was denied and the new trial was conducted on May 30, 2001. Defendants were subsequently found guilty of criminal damage to property. We find no error in the trial court's ruling on this issue. In fact, the trial court's ruling was consistent with the Children's Code.
B. On motion of the child before disposition, an adjudication shall be vacated and a new adjudication hearing ordered if, after a contradictory hearing, the court finds that:
(1) The adjudication is not responsive to the petition, or is otherwise so defective that it will not form the basis of a valid judgment, in which case the child shall be remanded to custody or bail to await a new adjudication hearing.
La. Ch.C. art. 887.
The official comments to article 887 state that the article's language was taken from the Code of Criminal Procedure. "The court shall arrest the judgment [if]... [t]he verdict is not responsive to the indictment, or is otherwise so defective that it will not form the basis of a valid judgment." La.C.Cr.P. art. 859. The Code of Criminal Procedure further states that:
. . .
If the judgment is arrested because the wrong type of tribunal tried the case, or because the verdict is not responsive to the indictment or is otherwise fatally defective, the defendant shall be remanded to custody or bail to await a new trial.
. . .
La.C.Cr.P. art. 862.
The provisions of the Children's Code shall govern and regulate delinquency proceedings *568 of courts exercising juvenile jurisdiction. La. Ch.C. art. 803. Therefore, La. Ch.C. art. 887 is applicable to the case sub judice. Since the language of La. Ch.C. art. 887 is taken from La.C.Cr.P. arts. 859 and 862, we interpret La. Ch.C. art. 887 in the same manner that La. C.Cr.P. arts. 859 and 862 are interpreted.
Prior to the adoption of the Children's Code, a juvenile was convicted of a crime that was non-responsive to the indictment in State In Interest of Johnson, 365 So.2d 940 (La.App. 4th Cir.1978). The court declared the trial a mistrial, discharged the defendant and remanded him to the custody of the juvenile court. The court further stated that the juvenile court could remand the defendant to custody for a new trial under the provisions of La.C.Cr.P. art. 862.
The retrial of Defendants was required by the Children's Code. Defendants were adjudicated delinquent of a crime that was non-responsive to the indictment and they filed a motion to vacate, which was granted. La. Ch.C. art. 887(B)(1) states that Defendants, in a case like this, "shall be remanded to custody or bail to await a new adjudication hearing."
Retrying Defendants did not constitute double jeopardy. In State v. Gooden, 523 So.2d 283 (La.App. 2d Cir.1988), writ denied, 530 So.2d 570 (La.1988), the defendant pled guilty to a crime that was non-responsive to the indictment. No amended indictment was ever filed. Thus, he pled guilty to an offense for which he was never charged. Since he was never charged with that offense, he was never in jeopardy as a result of his plea.
Similarly, Defendants in this case have been in jeopardy, but the conviction was of an offense that was not responsive to the stated charge. Stated another way, the trial court's finding of guilt was of an offense for which they were never charged. It was a "non-verdict."
For the foregoing reasons, we find that Defendants were not twice placed in jeopardy in violation of the Louisiana Constitution.

Sufficiency of the Evidence
Defendants next argue that the evidence was insufficient to support the trial court's adjudication of delinquency as principals to criminal damage to property.
A conviction must be based upon proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); State v. Bellamy, 599 So.2d 326 (La.App. 2d Cir.1992), writ denied, 605 So.2d 1089 (1992).
The state is not limited to direct evidence to prove the elements of a crime. "The Jackson standard is applicable in cases involving both direct and circumstantial evidence." State v. Thompson, 33,058 (La.App.2d Cir.4/7/00), 758 So.2d 972. "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence." La. R.S. 15:438. Incorporating the Jackson standard, an appellate court must determine that, viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact would have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Honeycutt, 438 So.2d 1303 (La.App. 3d Cir.1983), writ denied, 443 So.2d 585 (La.1983).
Defendants were found to be principals to criminal damage to property. "All persons concerned in the commission of a crime, whether present or absent, and *569 whether they directly commit the act constituting the offense, aid and abet in its commission, or directly or indirectly counsel or procure another to commit the crime, are principals." La. R.S. 14:24. Regarding whether Defendants directly committed the act of cutting the pool's liner, we find that every reasonable hypothesis of innocence was not excluded in this case. The record shows that R.L. cut the pool's liner, although he testified that he did not cut the initials "J.D." into the pool's liner. Further evidence shows that R.L. left the box cutter in the pool, but that he next saw it outside of the pool, although he did not see Defendants with the box cutter. It may be reasonable to conclude that one of the defendants moved the box cutter, even though they both denied ever touching it. It may also be reasonable to conclude that one of the defendants cut the initials "J.D." into the pool's liner. It cannot be reasonably concluded, however, that both Defendants committed the crime. All reasonable hypotheses of innocence, therefore, were not excluded.
Since the State failed to prove that Defendants directly committed the act in this case, the State then had the burden of proving that Defendants either aided and abetted in the cutting of the pool's liner or that Defendants counseled or procured R.L. to cut the pool's liner. B.J.D. saw R.L. with the box cutter before he (R.L.) cut the pool's liner. In fact, when R.L. told B.J.D. that he was going to cut the pool's liner, B.J.D. told him not to do it. J.J.D. also saw R.L. with the box cutter, but he did not say or do anything. There was no proof that Defendants aided and abetted or counseled or procured R.L. in the cutting of the pool's liner.
R.L.'s cutting of the pool's liner was a deviation from the trio's plan to trespass and swim in the pool. All parties to a crime are guilty for deviations from the common plan which are the foreseeable consequences of carrying out the plan. State v. Smith, 98-2078 (La.10/29/99), 748 So.2d 1139. Since there was no evidence showing any other plan, the State did not prove that Defendants could have reasonably foreseen R.L.'s cutting of the pool's liner.

CONCLUSION
For the foregoing reasons, we conclude that Defendants were not placed in double jeopardy, although the evidence in this case was not sufficient to prove beyond a reasonable doubt that Defendants were guilty as principals of criminal damage to property. As a result of this decision, we pretermit any discussion of the hearsay issues raised by Defendants.
CONVICTIONS REVERSED AND SENTENCES VACATED.
NOTES
[1] R.L. is not a defendant in this case. He had previously pled guilty to criminal damage to property and was called as a witness for the State in this case.
[2] This deputy's name is spelled three ways (Wallis, Wallace and Willis) in the record. We use "Wallis" because "Wallis" is the spelling contained on the cover of the certified trial transcript.