DO NOT PUBLISH

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

**09-8**

**STATE OF LOUISIANA**

**VERSUS**

**JAKE M. THURMAN**

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
THIRTY-SIXTH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD, NO. 1138-06
HONORABLE HERMAN I. STEWART, DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

**J. DAVID PAINTER
JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of Sylvia R. Cooks, Oswald A. Decuir, and J. David Painter, Judges.

**REVERSED.**

**G. Paul Marx**
**Louisiana Appellate Project**
**P.O. Box 82389**
**Lafayette, LA 70598**
**Counsel for Defendant-Appellant:**
    **Jake M. Thurman**

**David W. Burton**
**District Attorney**
**P.O. Box 99**
**DeRidder, LA 70634**
**Counsel for Appellee:**
    **State of Louisiana**

**PAINTER, Judge.**

Defendant, Jake M. Thurman, appeals his conviction for second offense driving while intoxicated. For the following reasons, we reverse.

**FACTS**

On the evening of August 5, 2006 or early morning of August 6, 2006, Defendant was in a single-car accident on a remote highway. There were no witnesses to the accident, and Defendant left the scene before the accident was discovered by authorities. Defendant was later located and, after being found to be intoxicated, was arrested and charged with driving while intoxicated (DWI), fourth offense, a violation of La.R.S. 14:98.

Following a jury trial held on October 21-22, 2008, Defendant was found guilty of second offense DWI. On October 30, 2008, Defendant was sentenced to one hundred eighty days in the parish jail, ninety days suspended, and ordered to pay a fine of $1,000.00, plus court costs. He was also placed on supervised probation for two years. Defendant appeals asserting that the evidence was insufficient to convict him of driving while intoxicated, second offense. We agree.

**DISCUSSION**

*Sufficiency of the Evidence*

In his sole assignment of error, Defendant argues that the evidence was insufficient to prove operation in this case. Defendant maintains that the evidence at trial only showed that he drove his mother's vehicle into a ditch, and that hours later, he was intoxicated.

Pursuant to La.R.S. 14:98, the State had the burden of proving that Defendant operated the vehicle and that while he was operating the vehicle, he was either under the influence of alcohol or had a blood alcohol concentration of .08 or more.

1

Defendant's argument emphasizes the fact that there were no witnesses to the accident or evidence to controvert his testimony that he became intoxicated after the accident.

In support of his argument, Defendant refers to *State v. Lindinger*, 357 So.2d 500 (La.1978). In *Lindinger*, an officer responded to a report and found the defendant resting against a pickup truck located in a field about fifty to one hundred feet off the highway. The defendant was barely able to stand and appeared intoxicated. A fifth of whiskey was found in the pickup truck with three-fourths of the whiskey gone. The defendant was unable to respond to the officer's questions, and the officer did not know how long the defendant was in the field before he arrived. A second officer arrived and noted skidmarks which indicated that the vehicle skidded off the highway into the field after the brakes were applied. The defendant was subsequently found guilty of driving while intoxicated.

The supreme court reversed the conviction, finding that the State's evidence of the defendant's intoxication and the fact that he was found standing by pickup truck which had skidded off the highway into field at some prior undetermined time was insufficient to sustain his conviction of operating a motor vehicle while intoxicated. The court noted that the evidence did not show how long the defendant or the pickup truck was in the field before he was found, that he was driving the pickup truck at the time it left the highway, or that he was intoxicated at the time the vehicle left the highway.

Unlike *Lindinger*, the State in the instant case presented evidence that Defendant was driving the vehicle when it left the highway. Defendant admitted at trial that he was driving the car in question on the evening of August 5, 2006, and when it left the roadway. Defendant testified that he was on his way to Merryville

2

from Delta Downs, traveling on Highway 389, when it started raining heavily. Defendant stated that could no longer see and, in an alleged attempt to turn onto a driveway, he turned into a ditch. Trooper Johnson of the Louisiana State Police testified that when Defendant was questioned after the accident, he admitted that he was the driver of the car in question. Additionally, he accurately described the vehicle and stated that it was his mother's car. Considering Defendant's testimony and that of Trooper Johnson, we find that the State proved that Defendant was operating the vehicle that was found in the ditch.

The remaining issue, however, is whether Defendant was under the influence when he was operating the vehicle. Defendant does not dispute the fact that he was intoxicated after the accident and correctly asserts that there was no direct evidence to show that he was intoxicated at the time he was driving the vehicle. The State relied upon circumstantial evidence to prove that Defendant was intoxicated when he was operating the car.

With regard to the use of circumstantial evidence, this court in *State v. Chapman*, 625 So.2d 1347, 1349 (La.App. 3 Cir.), *writ denied*, 629 So.2d 1180 (La.1993), stated:

> La.R.S. 15:438 provides:
>
> > The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
>
> Incorporating this rule under the *Jackson* standard, an appellate court must determine that viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact would have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. *State v. Honeycutt*, 438 So.2d 1303 (La.App. 3d Cir.), *writ denied*, 443 So.2d 585 (La.1983).
>
> In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and

circumstances from which the existence of the main fact may be inferred according to reason and common experience. *State v. Shapiro*, 431 So.2d 372 (La.1982).

In *Chapman*, this court determined that the defendant presented a hypothesis of innocence at trial. The defendant testified that he began drinking after the accident, not before the accident.

In reversing his conviction, this court observed that the State presented no evidence to show that the defendant was intoxicated when he drove the vehicle. The court noted that the accident involved a single car and that there was no evidence presented by the State to suggest when the defendant's vehicle left the roadway. The investigating officer admitted that there was nothing about the vehicle to indicate that its driver had been drinking. Lastly, at least two hours had elapsed between the time the defendant was taken home after the accident and before he given an Intoxilyzer test.

Defendant in the instant case raises the same hypothesis of innocence as in *Chapman*. Defendant testified at trial that he was not intoxicated at the time of the accident and that he did not consume any alcohol until thirty to forty-five minutes after the accident. Defendant explained that he was driving his mother's vehicle on August 5, 2006. After dropping off his cousin in Merryville at about 6:30 p.m., he drove to Delta Downs to bet on the horse races, arriving around 7:00 p.m. Defendant stated that he did not drink when he was at Delta Downs. When he learned that the horses were not racing that evening, he walked around for about twenty minutes, then decided to return to Merryville.

Defendant stated that on his way home, he stopped at the Texaco Truck Stop in Starks, Louisiana, purchased a pack of cigarettes, a twelve-pack of beer and either a two liter or a one and one-half liter bottle of Southern Comfort. A receipt for his

purchase submitted into evidence confirmed that Defendant purchased beer and Southern Comfort with his Discover credit card at 7:29 p.m. Defendant maintained that the alcohol was purchased for a barbeque scheduled the following day, because he would be unable to purchase alcohol on Sunday in Merryville.

Next, Defendant testified that he left Starks and was traveling on Highway 389 when it started to rain heavily. He maintained that he had not been drinking at that time. Defendant stated that he slowed down because he could not see and was unable to pull over because there was no shoulder. He described the area as wooded and dark, with no houses, lights, or businesses. Defendant testified that he began looking for a drive to pull into to get off the road. At about 8:30 p.m., he saw a reflector that he believed was marking a culvert under a driveway. Rather than driving over the culvert, Defendant testified that he slid into a ditch.

After the car entered the ditch, water began to enter the car's interior. Defendant got out of the car while it was still lightning and raining. He had no place to go and did not have a cell phone to call for help. Defendant explained that he began to walk toward a stop sign about two miles away to look for a house or passerby so that he could call 911 and a tow truck for help. According to Defendant, it was a long time before someone passed by, so he walked on to the stop sign. He maintained that he walked back and forth to the car several times. When he became hungry, he drank a "couple" of beers. Defendant also stated that he took sips of Southern Comfort as he walked back and forth, drinking about a "quarter" of it. He was not certain how long he stayed with the car.

Defendant indicated that at some point, he began walking toward Merryville. He testified that after walking six to seven miles, two ladies pulled up and offered him a ride to Merryville. Defendant stated that he offered to fill up their car with gas.

5

A receipt indicating that Defendant purchased gas at the Shell station in Merryville at 2:29 a.m. was submitted into evidence. Defendant maintained that six hours elapsed from the time his car was in the ditch at 8:30 p.m., until he arrived in Merryville.

On cross-examination, the State attempted to show that the accident happened later than 8:30 p.m. Defendant confirmed that it would take forty-five minutes to an hour to get from Merryville to Delta Downs. Thus, if he left Merryville at 6:30 p.m. after dropping off his cousin, he would have arrived at Delta Downs close to 7:15 p.m. Defendant stated, however, that he may have left Merryville sooner. He recalled that it was during the evening but could not recall the exact time. Additionally, Defendant reiterated that he stopped at the convenience store after leaving Delta Downs. The register receipt confirms that he made a purchase at 7:29 p.m., but does not indicate what time he left Delta Downs.

In this case as in *Chapman*, the State did not present evidence to suggest when his vehicle left the roadway, only that the accident may have occurred after 8:30 p.m. First, the record reflects that the wreck was reported and that the vehicle was discovered some time between 12:00 a.m. and 1:00 a.m. Deputy Joe Warren with the Beauregard Parish Sheriff's Office testified that he was patrolling the west side of the parish when he was dispatched to an accident on Highway 389. At 1:00 a.m., Deputy Warren discovered a small unoccupied red car in the opposing ditch at mile marker 17. Deputy Warren stated that the car had to cross the opposing lane to reach the ditch. According to Deputy Warren, the car was located at least fifteen miles from Merryville in an isolated area he described as "the middle of nowhere."

Next, the record indicates that Defendant was located in Merryville at about 2:30 a.m. Officer John Brown of the Merryville Police Department testified that

6

some time after midnight, he was dispatched to investigate a wrecked car on Highway 389. During the investigation, Officer Brown learned that the driver of the car was at the Merryville Truck Stop. Officer Brown found Defendant at the truck stop and asked him to go to the police station to speak with state troopers.

Lastly, the record reflects that Defendant was questioned and tested at about 3:15 a.m. and 4:00 a.m. According to Officer Brown, Trooper Jeff Johnson with the Louisiana State Police arrived about twenty minutes after Defendant arrived at the police station. Trooper Johnson testified that he arrived in Merryville at 3:13 a.m., more than two hours after Defendant's car was discovered. When Trooper Johnson first entered the room and began speaking to Defendant, he immediately noticed a strong odor of alcoholic beverage. He then noticed that Defendant was swaying, his speech was slurred, and his eyes were bloodshot. It was very obvious to Trooper Johnson that Defendant had been drinking. After questioning Defendant, Trooper Johnson arrested him and transported him to the Beauregard Sheriff's Office for chemical testing. Defendant's blood alcohol level was tested using the Intoxilyzer 5000 which indicated that his blood alcohol was .153, almost twice the legal limit, at 3:51 a.m. The test was performed at least three hours after his car was discovered.

Trooper Johnson's accident report indicates that the accident occurred at 1:15 a.m. Trooper Johnson testified, however, that the time is an estimate and stated that such estimates are not always accurate. Trooper Johnson testified that he considered the time he received notice of the accident and the time Defendant was in Merryville. Trooper Johnson admitted that he was uncertain how much time elapsed from the time the vehicle ran into the ditch and his first contact with Defendant.

Additionally, as in *Chapman*, there is no evidence that the investigating officers found any evidence of alcohol consumption in the vehicle. Deputy Warren

7

stated that he looked in Defendant's vehicle but did not see any beer cans or bottles of liquor. Trooper Johnson also performed a basic inventory of the vehicle and did not recall finding any alcoholic beverages. Lastly, even if the officers had found beer or liquor in Defendant's car, the ruling in *Lindinger* suggests that the State still had to show how long the car was in the ditch before Defendant was found and that he was intoxicated at the time the vehicle left the highway.

Trooper Johnson also testified that from the position of the vehicle in the ditch, it appeared that the driver of the vehicle had fallen asleep. He explained that there was no indication that some type of evasive action was taken or that the driver lost control. Although Trooper Johnson agreed that there were old roads leading to hunting clubs and oil wells up and down Highway 3898, Trooper Johnson did not believe that the driver's assertion that he confused the area for a driveway because the ditch was steep and grassy and there was no asphalt or improvement in the area. Trooper Johnson stated that he had no reason to suspect that the accident was alcohol related. However, based on his experience, not evidence, Trooper Johnson opined that the driver was either sleepy or intoxicated.

The State contends that the jury made a credibility determination and did not believe Defendant's trial testimony but believed that of Trooper Johnson. According to Trooper Johnson, Defendant denied having anything to drink since the accident. Defendant maintained, however, that Trooper Johnson never asked him this question. The State also asserts that Defendant is a seasoned DWI offender and thus, further tarnishes his credibility. Defendant does not dispute that he has three prior DWI convictions.

In support of its argument, the State refers to *State v. Lambert*, 97-64 (La.App. 3 Cir. 9/30/98), 720 So.2d 724, wherein the defendant asserted that he started

8

drinking after the accident. The facts in *Lambert*, however, are easily distinguished from the instant case. In *Lambert*, the defendant was involved in a two-car accident, and the driver of the other car was able to establish the time of the accident. The defendant did not stop following the accident, and the victim saw the vehicle turn into a trailer park, saw the driver exit the vehicle, and enter an area where two trailers were located. Investigating officers established that the vehicle parked outside of one of the trailers belonged to the defendant. The defendant, however, denied any knowledge or involvement in the accident. During questioning, the officers determined that the defendant had been drinking alcoholic beverages but could not establish when he became intoxicated. Also, the defendant refused to take an Intoxilyzer test.

The defendant was convicted, nonetheless, after the State established at trial that the defendant was in his home about twenty minutes prior to the officers' arrival and that they could smell alcohol on his breath, his speech was slurred, his eyes were blood shot, and he staggered. In affirming the trial court's ruling on appeal, the court distinguished the facts from those in *Chapman*, 625 So.2d 1347, noting only twenty to twenty-five minutes elapsed between the time of the accident and the time the defendant was questioned. The court also addressed the fact that the defendant had a history of two trials for operating a motor vehicle while intoxicated and concluded that his assertion of post-accident drinking was more likely a subterfuge.

Although a reasonable person could conclude that Defendant's version of the events is not believable, the State, nonetheless, did not present evidence to suggest when Defendant's vehicle left the roadway. Additionally, the testimony elicited at trial indicates that at least two hours elapsed between the time the vehicle was discovered and the time Defendant was determined to be intoxicated. Further, there

9

was no evidence in or near the vehicle to indicate that Defendant had been drinking prior to the accident. Accordingly, we conclude that the evidence is not sufficient to find that Defendant was driving under the influence of alcohol at the time his vehicle left the roadway.

## CONCLUSION

Because the State failed to carry its burden of showing that Defendant operated his vehicle while intoxicated, Defendant's conviction is reversed.

**REVERSED.**