687 So.2d 515 (1996)
STATE of Louisiana
v.
Melanie CORTEZ.
No. CR96-859.
Court of Appeal of Louisiana, Third Circuit.
December 18, 1996.
*516 Morgan J. Goudeau III, Opelousas, David Michael Miller, Assistant District Attorney, for State of Louisiana.
Francis A. Olivier III, Sunset, for Melanie Cortez.
Before WOODARD, PETERS and GREMILLION, JJ.
WOODARD, Judge.
Defendant, Ms. Melanie Cortez, was found guilty of attempted cruelty to a juvenile and was sentenced to three years at hard labor. Defendant's sentence was suspended and she was placed on three years active supervised probation, subject to the conditions of La. Code Crim.P. art. 895 and other special conditions. Additionally, defendant was ordered to serve thirty days in the parish jail with work release. Upon completion of the thirty days, defendant was ordered to serve six months home incarceration, except for work, Sundays and visitation time with her child. Defendant appeals her conviction and sentence.

FACTS
On May 17, 1995, the defendant took her six-month old son, Hayden Cortez, to his regular pediatrician, Dr. Glenn Borne, because she was concerned that the child might have an ear infection. Upon examination of the child, Dr. Borne discovered that the child had suffered a severe injury to his leg, specifically a slippage of the right capital femoral epiphysis. The child also had an ear infection.
The record reveals that Hayden is Ms. Cortez' first child. Ms. Cortez was twenty-two at the time of the incident in question. She is a certified nurse's assistant who works at a community home. She works three-day shifts during which she is not allowed to leave the community home. While Ms. Cortez is at work, Hayden is generally cared for by Kevin Bergeron, her roommate. She has lived with Mr. Bergeron for approximately two and one-half years. Their relationship is a platonic one. At the time of the incident, Mr. Bergeron, Deann Shuey (Mr. Bergeron's girlfriend), Carisa Shuey (Mrs. Shuey's daughter), Ms. Cortez, and Hayden Cortez all lived together. The record further reveals that Ms. Cortez was working from Tuesday, May 9, 1995 to Thursday, May 11, *517 1995. She did not work on Friday, May 12 or Saturday, May 13. She went back to work on Sunday, May 14, and returned home again on Tuesday, May 16. During the time that Ms. Cortez was at work, several individuals had contact with the child. The record reveals that some or all of the following people had direct physical contact with Hayden: Kevin Bergeron; Deann and Carisa Shuey; Hayden's father and his wife; Ashley Cortez (Ms. Cortez' half-sister); Jessie Jerkins (Ashley's boyfriend); Stephanie Cortez (Ms. Cortez' stepmother); Kathryn (Stephanie's daughter), Carmen and Roger (Stephanie's sons); and Roger Cortez (Ms. Cortez' father).
Kevin Bergeron was the only person who testified regarding Ms. Cortez' actions upon discovering that there was a problem with the child's leg. He stated that when she returned home on May 12, she resumed caring for her child; it was then that they first noticed the swelling. Ms. Cortez pointed out to him that the child was favoring his leg and that the leg appeared swollen. Mr. Bergeron believed the swelling to be the result of an insect bite, and neither of them thought the problem was serious. Mr. Bergeron testified that when Ms. Cortez left for work on Sunday, May 14, he did not notice that the swelling had worsened. On Monday, May 15, Ms. Cortez phoned Dr. Borne's office, concerned that Hayden's ear infection was worsening. An appointment was scheduled for Wednesday, May 17. When she returned home on Tuesday, May 16, she told Mr. Bergeron the swelling looked worse. According to Mr. Bergeron, the two took the baby's bed apart to make sure there were no insects in the bed, fearing the child may have been bitten. When Ms. Cortez took Hayden to Dr. Borne on the following day, the true nature of the injury was discovered. None of the other witnesses who had cared for Hayden ever noticed anything wrong with his leg, nor did they provide evidence as to how the injury might have occurred. Immediately following the discovery of the injury, Hayden was admitted to Moosa Memorial Hospital. A specialist in pediatric orthopedics, Dr. Douglas McKay, was brought in to consult on Hayden's case. After a week-long stay at Moosa, Hayden was transferred to a children's hospital in New Orleans.
On July 26, 1995, a bill of information was filed, charging Melanie Cortez with cruelty to a juvenile, a violation of La.R.S. 14:93. The bill of information reflected that the child's mother was charged with cruelty to a juvenile in that "she intentionally and in a criminally negligent manner mistreated and neglected" her child. On August 4, 1995, she waived formal arraignment and entered a plea of not guilty to the charge. After a trial by jury, on December 12 and 14, 1995, she was found guilty of attempted cruelty to a juvenile. On December 19, 1995, Ms. Cortez filed a motion for post-verdict judgment of acquittal alleging, inter alia, that the state failed to show that, as a matter of law, Ms. Cortez unreasonably delayed treatment for her son based on the facts as presented at trial. After a hearing, the trial judge denied the motion. She was sentenced on April 4, 1996 to three years at hard labor. Her sentence was suspended, however, and she was placed on three years active supervised probation subject to the conditions of La. Code Crim.P. art. 895 and other special conditions. Additionally, Ms. Cortez was ordered to serve thirty days in the parish jail with work release, after which she was to serve six months home incarceration, except for work, Sundays, and for visitation time with her child.

ASSIGNMENTS OF ERROR
Ms. Cortez claims the following five assignments of error:
1. The trial court erred when it overruled the objections, made by defendant during the course of trial, pertaining to the following:
A. The court erred in allowing Dr. Glenn Borne to testify regarding whether immunizations were received by defendant's child and regarding the type of injury incurred by the defendant's son.
B. The court erred in allowing Dr. Douglas McKay to testify as to potential complications that can result from a slippage of the epiphysis and in permitting *518 him to interpret the meaning of Dr. Higgins' notes.
C. The court erred in allowing Delores Frey Quebedeaux to testify as to and/or interpret the defendant's demeanor when staying in the hospital with her child, as well as to testify as to the responses she had from other parents and caretakers of children hospitalized and to further compare those responses to the responses of the defendant.
D. The court erred in allowing Anne Legg to testify regarding the defendant's participation in the WIC program and the physical examinations offered to infants and children.
E. The court erred in allowing Roger Dale Cortez to testify as to defendant's child's happiness. (abandoned)
F. The court erred in allowing Kathryn Denise Cortez to interpret a statement made attributing the child's injury to someone other than the defendant. (abandoned)
2. The trial court erred in denying defendant's Motion for Post Verdict Judgment of Acquittal which was based upon the State's failure to show that, as a matter of law, the defendant unreasonably delayed treatment for her son under the circumstances presented at trial.
3. The trial court erred when it refused to grant defendant's motion for a mistrial.
4. The evidence was insufficient to support the jury's verdict of guilty of attempted cruelty to a juvenile.
5. The sentence is cruel and unusual under the circumstances of the case.

LAW

SUFFICIENCY OF THE EVIDENCE
Pursuant to State v. Hearold, 603 So.2d 731 (La.1992), we will first consider Ms. Cortez' fourth assignment of error in which she contends that the evidence was insufficient to support the jury's verdict of guilty of attempted cruelty to a juvenile.
In Hearold, the supreme court stated:
When issues are raised on appeal both as to the sufficiency of the evidence and as to one or more trial errors, the reviewing court should first determine the sufficiency of the evidence. The reason for reviewing sufficiency first is that the accused may be entitled to an acquittal under Hudson v. Louisiana, 450 U.S. 40, 101 S.Ct. 970, 67 L.Ed.2d 30 (1981) ... [and] Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)....
Id. at 734.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; State ex rel. Graffagnino v. King, 436 So.2d 559 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second-guess the credibility determinations of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, 436 So.2d 559 (citing State v. Richardson, 425 So.2d 1228 (La. 1983)). In order for this court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.
Based upon our review of the record, it is clear that the state's case was based entirely on circumstantial evidence. No direct evidence is apparent from the record. La.R.S. 15:438 provides:
The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in order to convict, it must exclude every reasonable hypothesis of innocence.
Therefore, under this statute and the Jackson standard, the duty of the appellate court is to determine, viewing the evidence in the light most favorable to the prosecution, *519 whether a reasonable trier of fact could have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Honeycutt, 438 So.2d 1303 (La.App. 3 Cir.), writ denied, 443 So.2d 585 (La.1983); See also, State v. Morris, 414 So.2d 320 (La.1982). In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). See also State v. Chism, 436 So.2d 464 (La.1983).

CRUELTY TO A JUVENILE
At trial, the judge instructed the jury on the charge of cruelty to a juvenile, as well as the responsive verdict of attempted cruelty to a juvenile. At no time did the defense object to the trial court's charge to the jury. Assuming for the moment that the responsive verdict of attempted cruelty to a juvenile is legislatively designated as responsive pursuant to La.R.S. 14:27, we must first examine whether there was sufficient evidence presented at trial to find Ms. Cortez guilty of the greater offense, namely, cruelty to a juvenile. In State ex rel. Elaire v. Blackburn, 424 So.2d 246, 251-52 (La.1982), cert. denied, 461 U.S. 959, 103 S.Ct. 2432, 77 L.Ed.2d 1318 (1983), the Louisiana Supreme Court held:
[I]f the defendant does not enter an objection [to an instruction on a responsive verdict on the basis that the evidence does not support that responsive verdict] (at a time when the trial judge can correct the error), then the reviewing court may affirm the conviction if the evidence would have supported a conviction of the greater offense, whether or not the evidence supports the conviction of the legislatively responsive offense returned by the jury.
It would be unfair to permit the defendant to have the advantage of the possibility that a lesser "compromise" verdict will be returned (as opposed to being convicted of the offense charged) and then to raise the complaint for the first time on appeal, that the evidence did not support the responsive verdict to which he failed to object. Therefore, at least when the defendant fails to interpose a timely objection to a legislatively responsive verdict, this court will not reverse the conviction if the jury returns such a verdict, whether or not that verdict is supported by the evidence, as long as the evidence is sufficient to support the offense charged.
Pursuant to Elaire, therefore, we will first review the record for a determination of the sufficiency of the evidence related to the greater offense of cruelty to a juvenile. If we find that the evidence presented at trial would have been sufficient to sustain a conviction of cruelty to a juvenile, our analysis ends and we must affirm. If, however, we determine that there was insufficient evidence to uphold a guilty verdict for the greater offense, we will then review the sufficiency of the evidence for the responsive verdict of attempted cruelty to a juvenile.
La.R.S. 14:93 provides, in pertinent part:
A. Cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect, by anyone over the age of seventeen, of any child under the age of seventeen whereby unjustifiable pain or suffering is caused to said child. Lack of knowledge of the child's age shall not be a defense.
(Emphasis added). The term "intentional," within the meaning of this statute, has been defined as requiring only "general criminal intent," and not specific intent to cause a child unjustifiable pain and suffering. State v. Morrison, 582 So.2d 295 (La.App. 1 Cir. 1991); State v. Green, 449 So.2d 141 (La.App. 4 Cir.1984). La.R.S. 14:10(2) provides:
General criminal intent is present whenever there is specific intent, and also when the circumstances indicate that the offender, in the ordinary course of human experience, must have adverted to the prescribed criminal consequences as reasonably certain to result from his act or failure to act.
In State v. Comeaux, 319 So.2d 897, 899 (La.1975), the Louisiana Supreme Court stated:
"Mistreatment" is in common usage and is equated with "abuse." See Webster's Third New International Dictionary, Verbo *520 abuse. In our opinion, "mistreatment" has a commonly understood meaning.
(Emphasis supplied.)
In Morrison, the court recognized that: "As an alternative to proving that an accused intentionally mistreated or neglected a child, LSA-R.S. 14:93 permits the state to prove the accused was criminally negligent in his mistreatment or neglect of the child." 582 So.2d at 302. La.R.S. 14:12 defines criminal negligence as follows:
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender's conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances.
(Emphasis added.)
The state argues that Ms. Cortez caused her baby to endure unjustifiable pain or suffering due to her intentional or criminally negligent act of delaying treatment for her child. In State v. Jackson, 419 So.2d 837 (La.1982), the supreme court found that sufficient evidence was presented to convict a defendant for violating La.R.S. 14:93 in that she allowed her child to be malnourished and failed to seek medical attention.
As will be discussed in greater detail below, it has been recognized that specific intent cannot coexist with criminal negligence. Thus, in the case sub judice, this court must decide whether intentional mistreatment or criminally negligent mistreatment can be supported by the evidence. Two different questions and crimes are presented under this poorly drafted statute. A verdict of cruelty to a juvenile can be upheld by showing that Ms. Cortez had the general criminal intent to cause her child unjustifiable pain or suffering. In the alternative, absent a showing of general criminal intent, a verdict of criminally negligent mistreatment can be upheld if there is a showing that the defendant's conduct amounted to a gross deviation below the standard of care.
In order to prove that Ms. Cortez withheld medical treatment intentionally, the state must show that Ms. Cortez had some degree of knowledge of the child's injury, and was aware of the nature and extent of the injury. In order to prove criminally negligent mistreatment, the state must show that Ms. Cortez' conduct was so far below that expected of a reasonably careful person that it must be considered a gross deviation. The state attempted to prove this through circumstantial evidence, which requires the state to exclude all reasonable hypotheses of innocence on the part of Ms. Cortez.
The evidence, however, does not support a conviction for intentional mistreatment or criminal neglect of a juvenile. In fact, the bulk of the testimony presented at trial does not tend to support the state's position that Ms. Cortez delayed treatment.
First, the defendant's argument regarding the treatment that the child received once he was admitted to Moosa Memorial Hospital is persuasive regarding an urgent necessity to treat. The evidence clearly showed that medical personnel did not deem it necessary to provide the child with any type of emergency care or treatment from the moment he arrived at the hospital, shortly after his visit to Dr. Borne, or for the seven days he remained at the hospital, except to receive some mild pain medication. Therefore, there is no evidence to suggest that the defendant's failure to seek treatment earlier actually delayed any necessary treatment that the child required, or worsened his condition. In addition, Ms. Cortez could only be expected to seek treatment appropriate to a condition when she is, or should be aware of the nature or extent of the problem. As she had suspected, and for which she sought treatment, Hayden was suffering from an ear infection. Therefore, it is plausible, reasonable, and possible that this inexperienced mother perceived Hayden's irritability or discomfort to be related to that condition.
Second, a necessary element of the crime is that the child must have endured unjustifiable pain or suffering. Dr. Borne testified that he had never seen or treated this type of injury before. Perhaps most important was the testimony from those people who had contact with the child around the time he sustained the injury. Although Dr. Borne testified that the child cried out in pain, all of *521 the witnesses who had contact with the child just prior to the discovery of the injury stated that the child did not cry out. No one, but Dr. Borne, testified to hearing the baby scream or cry at a high volume for a prolonged period of time during the time the injury may have occurred. Ms. Menard, an LPN, testified regarding the child's hospital stay at Moosa Memorial Hospital. Ms. Menard noted on the chart that on May 18 and 19, 1995, the child was not in apparent pain, was awake and alert, and had no apparent discomfort when being held or moved. Therefore, the state did not present sufficient evidence to prove that the child endured any pain or suffering, regardless of whether it was justified, a necessary element of the crime.
Third, Dr. Borne testified that when he measured the diameter of the child's injured right leg, it was one-inch larger around than the left. In order to demonstrate this to the jury, the state introduced state's exhibit # 2, a photograph of Ms. Cortez and the child in the hospital room taken on May 18, the day after the child was admitted. After studying the photograph closely, we cannot say that a reasonable lay person would conclude that the child had suffered a serious and traumatic injury. Indeed, both Drs. Borne and McKay stated that the injury, or its severity, may not have been noticed or diagnosed by the average care giver. Dr. McKay further testified that he would not expect a parent to be able to recognize or diagnose this type of injury. Furthermore, the doctors themselves were uncertain as to when the injury occurred: Dr. Borne stated it was seven to ten days; Dr. McKay stated the injury occurred within twenty-four to forty-eight hours or three days before Hayden was admitted. Later, however, when Dr. McKay viewed the photograph, state's exhibit # 2, he stated that from the amount of swelling present, the injury occurred between 24 to 48 hours from when the picture was taken. Therefore, based on the testimony presented, it is impossible to determine exactly when the injury occurred. If we cannot determine when the injury occurred, how could we determine, beyond a reasonable doubt, that Ms. Cortez denied the child treatment at all?
Fourth, Dr. Borne stated that the cause of the injury, although unknown, was nonaccidental. However, state's exhibit # 4, a photocopy obtained from the page of a medical textbook on the subject, was less precise. The textbook indicated that 24% of these injuries occur in children who sustain mild to moderate trauma, or in situations when the mechanism of the injury is unclear. Furthermore, the textbook stated that while 50% of these injuries stem from motor vehicle or pedestrian accidents, other causes include falls and athletic injuries. Additionally, we note that as Dr. Borne was neither present at the time of the injury, nor had any evidence to substantiate his claim of its genesis, he was offering speculation, especially in light of the fact that he had never seen this type of injury before. Recalling the rule as to circumstantial evidence, assuming every fact to be proved that the evidence tends to prove, the evidence was insufficient to exclude every reasonable hypothesis of Ms. Cortez' innocence.
Lastly, Dr. Borne offered a vast amount of testimony related to Ms. Cortez' behavior, concluding that it was inconsistent with parents who were genuinely concerned about the health of their child. However, as conceded by the social worker and Dr. Borne himself, different people react to traumatic situations in different ways. Dr. Borne is a pediatrician, not a psychiatrist. We will not sustain a conviction based on what someone, albeit an able pediatrician, believes the appropriate reaction should have been at the time, without more. Accordingly, the state has failed to establish that Ms. Cortez harbored the general criminal intent to mistreat Hayden necessary to sustain a conviction under the statute, primarily because it failed to establish that she had any knowledge of the nature and severity of the injury, or how it could have occurred.
Not only do the facts not support a finding of intent, they also do not support a finding of criminal negligence. When Ms. Cortez finally noticed that her child was having a serious problem with his leg, she had already made an appointment, for his ear infection, with the pediatrician. If one accepts that Ms. Cortez disregarded her child to the level *522 the state claims, it would be unreasonable to assume that she would take the child in for any examination. On the contrary, testimony indicates that Ms. Cortez has met all of her appointments regarding the baby, whether medical or assistance related, and has missed only one assistance appointment just prior to Hayden's visit with Dr. Borne.
It is clear that the young mother made a judgment call regarding the seriousness of the leg injury. Perhaps, she indeed exercised bad judgment. However, a bad judgment call falls woefully short of equaling intentional mistreatment or criminal negligence and, without more, does not give rise to a charge under this statute. As the trial judge instructed the jury:
The mere failure of a person to act reasonably does not constitute criminal negligence. The conduct must be so far below that expected of a reasonably careful person that it can be considered a gross deviation.
It is obvious the jury reached a compromise verdict in this case and chose not to believe the entirety of the state witnesses' testimonies regarding the baby's condition and the caretaker's failure to notice this child was in pain from the time of the injury. First, the state's case is replete with material inconsistencies. There are inconsistencies presented by the doctors themselves regarding the visibility of the injury or a parent's ability to recognize this type of injury. Second, there are no other signs indicating that this child may have been abused, i.e. bruises, lacerations, bumps, or other trauma. There was no testimony presented regarding the mother's ill treatment of her child, or her failure to provide adequate care. Furthermore, the evidence shows that many people handled this baby throughout the time the injury may have occurred. In fact, the evidence showed that the person who spent the least amount of time with him during the period of injury was Ms. Cortez. In addition, the evidence presented clearly shows that the baby was not deprived of any medical treatment by the possible delay in seeking treatment, of anywhere between one to ten days, as he did not receive or require any emergency treatment, other than mild pain medication, for the seven days he remained at Moosa and before being transferred. Alarmingly, this court can find no other convictions brought under this statute, offering such minimal acts and potentially justifiable behavior on the part of a defendant, such as in the case sub judice.
We find that, at best, Ms. Cortez' conviction was based on marginal circumstantial evidence. There was no direct evidence of abuse, intent, knowledge or a gross deviation below the standard of care. There were, however, other plausible, reasonable, and possible explanations for what may have actually occurred. Therefore, this court does not find sufficient evidence was presented to prove that Ms. Cortez intentionally mistreated or acted in a criminally negligent manner which resulted in mistreatment or neglect. Although the baby is concededly not living under ideal circumstances, the circumstances certainly do not equal intentional mistreatment or criminal neglect based upon the facts of this case as presented by the state.

ATTEMPTED CRUELTY TO A JUVENILE
Having found the evidence insufficient to sustain a conviction for cruelty to a juvenile, we now must determine whether the evidence was sufficient to support a conviction for attempted cruelty to a juvenile. As stated above, La.R.S. 14:93 defines cruelty to a juvenile as the intentional or criminally negligent mistreatment of a child, which causes the child to experience unjustifiable pain or suffering. La.R.S. 14:27 provides, in pertinent part, that an attempt includes:
A. Any person who, having a specific intent to commit a crime, does or omits an act for the purpose of and tending directly toward the accomplishing of his object is guilty of an attempt to commit the offense intended; and it shall be immaterial whether, under the circumstances, he would have actually accomplished his purpose.
(Emphasis added).
La.Code Crim.P. art. 814 lists the "only" responsive verdicts which may be rendered when indictments charge a defendant with certain offenses. Attempts for the various offenses listed in the statute are also *523 provided, i.e attempted first degree murder, attempted armed robbery, etc. La.Code Crim.P. art. 815 provides the responsive verdicts for crimes which are not listed under article 814. Article 815 states:
In all cases not provided for in Article 814, the following verdicts are responsive:
(1) Guilty;
(2) Guilty of a lesser and included grade of the offense even though the offense charged is a felony, and the lesser offense a misdemeanor; or
(3) Not Guilty.
In State v. Anseman, 607 So.2d 665, 668 (La.App. 5 Cir.1992), writs denied, 613 So.2d 989, 990 (La.1993), our brethren of the fifth circuit accurately stated that:
Under the well-established law of Louisiana, the provisions of criminal statutes "shall be given a genuine construction, according to the fair import of their words, taken in their usual sense, in connection with the context, and with reference to the purpose of the provision." LSA-R.S. 14:3. Doubt concerning the extent of a criminal statute's coverage must be resolved in the accused's favor. State v. Brown, 378 So.2d 916 (La.1979)....
Cruelty to juveniles and its responsive verdicts are not listed in article 814. Therefore, pursuant to the statute and jurisprudence, a defendant charged under La.R.S. 14:93 can either be found: (1) guilty of intentional mistreatment or neglect if unjustifiable pain or suffering is caused to said child; (2) guilty of criminally negligent mistreatment or neglect if unjustifiable pain or suffering is caused to said child, and if no general criminal intent can be attributed to the defendant; or (3) not guilty. See Morrison, 582 So.2d 295.
Earlier, and after a careful review of the record, we concluded that the state has failed to prove, beyond a reasonable doubt, that Ms. Cortez harbored the requisite specific or general criminal intent necessary to sustain a conviction of the greater offense of intentional mistreatment. Having found the evidence insufficient to prove intent on the part of Ms. Cortez to commit this crime, a conviction for an attempt, absent specific intent, cannot stand. We need not go into another prolonged analysis of intent, as it would only prove cumulative of our earlier discussions regarding the greater offense. Therefore, our "attempt" analysis must shift to the second possible crime covered in the statute, namely criminal negligence.
A serious problem arises when a defendant is convicted of attempted cruelty to a juvenile, or more specifically, attempted criminally negligent mistreatment of a juvenile, "inasmuch as an attempt is a specific intent crime and a person cannot specifically intend to do something unintentionally." State ex rel. Elaire v. Blackburn, 424 So.2d at 250 (La.1982). A similar problem arose in the case of State v. Freeman, 409 So.2d 581(La.), cert. denied, 459 U.S. 845, 103 S.Ct. 100, 74 L.Ed.2d 90 (1982). In Freeman, a defendant argued that the trial court erred in including in the jury charges the possible verdict of "guilty of attempted cruelty to a juvenile." Id. at 586. The defendant based his argument, in part, on the fact that "[h]e could not be guilty of attempted criminal neglect because there is no such crime," citing State v. Adams, 210 La. 782, 28 So.2d 269 (1946). Id. at 587. In Adams, 28 So.2d at 270, the Louisiana Supreme Court faced a challenge to a conviction of attempted negligent homicide; negligent homicide was defined as "the killing of a human being by criminal negligence." Pursuant to the definition of criminal negligence outlined above, the court stated:
[I]nasmuch as criminal negligence is an essential element of the crime of negligent homicide, and inasmuch as criminal negligence cannot exist unless there is "`neither specific nor general criminal intent'", [sic] it is impossible for a person to be guilty of negligent homicide unless there is neither specific nor general criminal intent to commit the homicide.
Id. The court then recognized that an "attempt" applies to someone who has "a specific intent to commit a crime." Id. In determining that a verdict of attempted negligent homicide is not responsive to an indictment for attempted murder, the Adams court reasoned that:
[T]hese provisions in the Codes must be read in connection with [the] article ... *524 defining criminal negligence, and [the] article... defining "an attempt to commit the offense intended". [sic] And all of these provisions must be taken with the reservation made in ... the Criminal Code, that "The articles of this Code cannot be extended by analogy so as to create crimes not provided for herein". [sic] No such crime as an attempt to commit negligent homicide is provided for in the Criminal Code; and no such crime is possible under the provisions which are contained in the Code.

Id. 28 So.2d at 270-71 (emphasis added).
Notwithstanding, and without directly addressing the defendant's contentions or the court's prior jurisprudence, the supreme court in Freeman held that "[t]he jury was properly charged with the lesser verdict of attempted cruelty to a juvenile," because it was proven that the defendant had intentionally mistreated the child. Freeman, 409 So.2d at 587. We need not now discuss the correctness of the supreme court's ruling in Freeman, or its applicability to the case sub judice, as it is clearly distinguishable from the case at bar in one crucial aspect: No intent on the part of Ms. Cortez was proven by the state in the instant matter.
Based on our foregoing analysis, a conviction for attempted cruelty to a juvenile cannot stand for two reasons. First, the state has utterly failed to prove specific or general criminal intent on the part of Ms. Cortez necessary to sustain a conviction under the statute. A conviction based on attempted intentional mistreatment cannot stand absent a showing of general or specific criminal intent. Second, it is a legal impossibility for someone to be guilty of attempted criminal negligence. As stated above, one cannot harbor the intent to do an unintentional act. For this court to hold otherwise would defy law and logic. Accordingly, Ms. Cortez could not be convicted of attempted criminal negligence.

CONCLUSION
Having viewed the evidence in the light most favorable to the prosecution, we conclude that a reasonable trier of fact could not have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded, as is required in cases based on circumstantial evidence. See State v. Morris, 414 So.2d 320; State v. Honeycutt, 438 So.2d 1303. Having determined that Ms. Cortez' conviction must be reversed on the basis of insufficiency of the evidence, we will forego analysis of the remaining assignments of error.
REVERSED.