ROLAND L. BELSOME, Judge.
| T Defendants, Augustine Cavazos and Celeste Schmitt, appeal their convictions and sentences on charges stemming from Cavazos’ sexual molestation of Schmitt’s eight-year old daughter, R.S. For the following reasons, the convictions and sentences of both defendants are affirmed.
STATEMENT OF THE CASE
The State filed a bill of information charging Augustine Cavazos (Cavazos/de-fendant), with sexual battery of an eight-year old female, R.S. (count 1), a violation of La. R.S. 14:43.1 and with failure to register as a sex offender (count 2), a violation of La. R.S. 15:542(G)(2). The bill of information charged that the alleged offenses occurred during the period of December 30, 2007 through December 30, 2009.
At his arraignment, Cavazos entered a plea of not guilty. The trial court found *875 probable cause and bound Cavazos over for trial.
The State filed a notice of intent to offer evidence of another incident involving sexually assaultive behavior pursuant to La. C.E. art. 412.2. The incident was a sexual battery by the defendant upon a juvenile female victim in Florida in 1998, resulting in his conviction in 2000 for lewd and lascivious act/sexual battery |2on a child under sixteen years of age (the basis for his registration as a sex offender). Defendant filed a motion to sever the offenses and a motion to sever his case from that of his co-defendant, Celeste Schmitt. Both severance motions were denied.
Cavazo proceeded to trial, after which the jury returned a verdict of guilty on both counts. The court sentenced him to thirty-five years at hard labor, without benefits, with credit for time served, on count 1 and to ten years at hard labor, without benefits, with credit for time served on count 2. The sentences are to be served concurrently.
Cavazos filed a motion for new trial and a motion for post judgment verdict of acquittal, which were denied. The State multiple billed the defendant as a second felony offender, pursuant to his 2000 Florida conviction for sexual battery.[1] Following a hearing on the multiple bill, the court adjudged Cavazos a second felony offender. The trial court vacated his prior sentence on the sexual battery count (count 1) and resentenced him as a second offender to sixty-five years at hard labor without benefits, to be served concurrently with the sentence on the failure to register as a sex offender count (count 2).
In separate counts of the bill of information, Celeste Schmitt (Schmitt/defendant) was charged with being an accessory to sexual battery (count 3),[2] a violation of La. R.S. 14:25 and with cruelty to a juvenile (count 4), a violation of La. R.S. 14:93. At her arraignment, Schmitt entered a plea of not guilty. Following a hearing, the trial court found probable cause for both counts and bound Schmitt over for trial.
| ¡¡Schmitt waived her right to a jury and elected to be tried by the judge. At the conclusion of the bench trial, Schmitt was found guilty on both counts. Schmitt filed motions for new trial and post judgment verdict of acquittal, which were denied. Schmitt was sentenced on each count to five years’ incarceration, with four years suspended, and placed on four years active probation upon the completion of one year incarceration in Orleans Parish Prison, with the sentences to be served concurrently.

STATEMENT OF FACT

Defendant, Schmitt, and her co-defendant/live-in boyfriend, Cavazos (“Cava-zos”), were convicted on charges stemming from Cavazos’ sexual molestation of Schmitt’s eight-year old daughter, R.S.
Cavazos, also known as “Tito”, lived on Bodinger Street with Schmitt, the victim, and the victim’s sister, M.S., from December 2007 to December 2009. The victim testified that on more than one occasion when she was sleeping, “Tito” would come into her room and touch her chest and “vagiva”.[3] She further testified that the defendant got up early and left for work hours before her mother and sister got up, *876 and that it was during this time frame that the defendant assaulted her.
At first, she did not tell anyone about “Tito’s” behavior because she was scared, feared no one would believe her, and knew that the revelation would make her mother sad. Ultimately, on December 30, 2009, while the victim and M.S., were visiting their father’s home, she gave M.S. a note which indicated that the defendant, Cava-zos, had molested her. The handwritten note reflected that he “rated” her. She begged M.S. not to tell their parents; however, M.S. told their |4father, he confronted the victim, and then notified Schmitt, who denied she had any knowledge of Cavazos’ background.
The following day, the family met with the victim’s pediatrician for an examination. The victim told her pediatrician that “Tito” touched her, whereupon the physician advised the family to report the crime to the police. The police instructed the family to go to the Child Advocacy Center where they met with Detective Merricks, who was assigned to the NOPD Sex Crimes Child Abuse Division. The CAC staff interviewed the victim alone while Detective Merricks monitored the session via video camera. During her forensic interview at the CAC, the victim said she could not remember when the incident occurred. Following the interview, the detective informed the family that the victim did not give the staff any information; consequently, he could not arrest “Tito.” When the Schmitt returned to her home, after staying in a hotel that night with her mother, she told Cavazos to leave, which he did, but he returned on January 2, 2010, telling Schmitt that he had no money and nowhere to go.
On January 5, 2010, during the victim’s medical interview, the CAC doctor was able to elicit information from the victim. Specifically, Dr. Atzemis, a child abuse pediatrician and professor of pediatrics, took an incident history from her during which the victim explained that “Tito” had touched her in a bad way and hurt her. The victim said she tried to move but “Tito” moved her back. Using a gender neutral diagram, the victim circled the genital area where “Tito” had hurt her. Dr. Atzemis’ review of this case led her to conclude that the victim had suffered sexual abuse.
Based upon this information, Detective Merricks investigated Cavazos’ background and learned that he was a sex offender, who had been arrested and [ ¡^convicted in Florida for sexually assaulting a twelve year old girl, S.C. Detective Merricks prepared an application for Ca-vazos’ arrest.
S.C. testified at trial that when she was twelve years old and living in Florida in September 1998, she was victimized by Cavazos. She related for the jury that at that time, she and her mother lived in the apartment above the one occupied by Ca-vazos and his son; she babysat for Cava-zos on occasion. While she was at home alone, the defendant went to her apartment and asked to use the telephone. After the call, Cavazos entered the living room, and he asked her if she had ever had an orgasm. When she replied negatively, he asked her if she wanted to have one. Again, she said “no” but the defendant removed her shorts, reached into her pants, and began to digitally penetrate her vagina. She cried and struggled with Ca-vazos; he carried her to her bedroom and placed her on the bed. She kicked the defendant, escaping his hold, and ran to the front door where she ordered him out of the apartment. She reported the incident to her mother, who contacted the police. Cavazos plead guilty to sexually battering her. She said the battery left her unable to trust people.
*877 Detective Raymond Hughes of the sex crime unit explained that his job entailed conducting sex offender registrations in Orleans Parish and investigating and monitoring non-compliant offenders. Hughes stated that he knew Cavazos as a registered sex offender because he met with him. Hughes obtained residential, employment, and vehicle information from Cavazos. Hughes identified Cavazos’ sexual offender registration form dated December 18, 2007, relative to Cavazos’ sex offense conviction in Florida. The form listed 1915 Bodinger Street as Cavazos’ residence, and Schmitt as the person who occupied the residence with him. The form did not list any children in the household. Hughes testified that |fiSchmitt accompanied Cavazos to his December 2007 registration and subsequently delivered a $60.00 money order as payment of his annual registration fee.
Continuing, Hughes identified Cavazos’ sexual offender registration form dated December 22, 2008, which listed his residence as 1915 Bodinger Street "with Schmitt listed as an occupant; however, Cavazos did not disclose that two children also occupied the residence. During the course of the registration, Hughes reviewed the written registration notification requirements with Cavazos, after which Cavazos signed and initialed the requirements, acknowledging that he was aware of and understood his registration duties. One of the registration duties initialed by Cavazos provided: “If you move to a different parish or state, you must register your change of address with the sheriff and/or the police department where you are currently registered in person within three days. Also within three days, you must register your new address with the sheriff or the police department that you move to. Also federal laws may apply to offenders moving to another state.”
On January 7, 2010, Hughes accompanied the U.S. Marshals Service Fugitive Task Force to 1915 Bodinger Street conducting a warrant check for Cavazos in relation to this case. Although Cavazos was not at the residence, Schmitt was. From speaking with her, Hughes learned that Cavazos no longer lived at the residence, and that she drove Cavazos to the Greyhound Bus Station on January 6, 2010 where he boarded a bus bound for Kings-ville, Texas. Further, she said that she informed Cavazos that he was no longer allowed to return to the Bodinger Street residence.
Hughes testified that he should have been advised of Cavazos’ move no later than January 10, 2010. Consequently, Hughes obtained an arrest warrant for 17Cavazos on January 11, 2010, for Cava-zos’ failure to comply with the required notification of change of address. Even after issuance of the warrant, Hughes did not receive change of address notification from Cavazos.
Sgt. Emelda Toni Blanco testified that she was assigned to the NOPD Sex Crimes Unit at the time of the investigation into this crime. Her assignment required her to do compliance checks on sexual offenders. She said she performed a compliance check on defendant at 1915 Bodinger Street on January 16, 2008. Although Blanco did not have any conversations with Schmitt, Blanco did encounter Schmitt when she answered Blanco’s knock on the front door of the residence. Cavazos would exit the residence and speak with Blanco on the porch. Blanco estimated that from December 2007 until late 2009 she visited Cavazos’ residence on Bodinger Street four times.
Schmitt testified that she was aware that Cavazos had a conviction for possession of marijuana but denied knowledge of a sexual assault charge. She admitted *878 obtaining a money order on Cavazos’ behalf in the amount of $60.00 made payable to the City of New Orleans. She believed it was in payment for a fíne or fee. She stated that had she known of the sex offense conviction, she would never have allowed Cavazos near her children.
Under cross-examination by the State, Schmitt said Detective Hughes lied when he said he recognized her as the person who came to the police station and paid Cavazos’ registration fee. She also said that Sgt. Blanco lied when she testified that Schmitt answered the door several times when Blanco made compliance checks on Cavazos.
|sOn March 16, 2010, Merricks obtained an arrest warrant for Schmitt upon learning that she had accompanied Cavazos when he registered in New Orleans as a sex offender, and despite her denial, was aware of Cavazos’ criminal history.

ERRORS PATENT

A review of the record reveals one errors patent. The record indicates that the court sentenced Cavazos on the same day that his Motion for New Trial and Motion for Post-Judgment Verdict of Acquittal were denied. La.C.Cr.P. art. 873 states that if either of the foregoing motions is filed, sentence shall not be imposed until twenty-four hours after the motion is denied, unless the defendant expressly waives the delay or pleads guilty.
A defendant may implicitly waive the twenty-four hour delay by announcing his readiness for sentencing. State v. Agee, 2008-0203, p. 4 (La.App. 4 Cir. 7/23/08), 990 So.2d 95, 97.
In the present case, Cavazos waived the required twenty-four hour delay. When the judge asked if the defense had anything to say before sentencing, defense counsel responded: “Your Honor, there’s nothing to put on the record.” By virtue of the defense counsel’s statement, defendant announced his readiness for sentencing, which implicitly waived the waiting period. See State v. Robichaux, 2000-1234, p. 7 (La.App. 4 Cir. 3/14/01), 788 So.2d 458. Therefore, no remedial action is necessary.

AUGUSTINE CAVAZOS

ASSIGNMENT OF ERROR NUMBER 1

By his first assignment of error, the defendant argues that the evidence is insufficient to convict him of sexual battery and failure to register as a sex offender. In particular, the defendant maintains that there is no forensic evidence 1 slinking him to the offenses, and further, that there is no evidence identifying him as the perpetrator.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Rosiere, 488 So.2d 965, 968 (La.1986).
All evidence, direct and circumstantial, must meet the Jackson reasonable doubt standard. State v. Jacobs, 504 So.2d 817, 820 (La.1987). If a rational trier of fact reasonably rejects the defendant’s hypothesis of innocence, that hypothesis fails and, unless another one creates reasonable doubt, the defendant is guilty. State v. Captville, 448 So.2d 676, 680 (La.1984).
An appellate court must defer to the fact finder’s credibility choices and justifiable inferences of fact. State v. Lee, 94-2584, p. 7 (La.App. 4 Cir. 1/19/96), 668 So.2d 420, 426. It is not the function of this court to assess credibility or to reweigh the evidence. State v. Rosiere, 488 *879 So.2d 965, 968 (La.1986). The credibility-determination is within the sound discretion of the trier of fact and will not be disturbed unless clearly contrary to the evidence. State v. Vessell, 450 So.2d 938, 943 (La.1984); State v. Jones, 537 So.2d 1244, 1249 (La.App. 4 Cir.1989). The issue of credibility is reviewed on an abuse of discretion standard. State v. Cashen, 544 So.2d 1268 (La.App. 4 Cir.1989).
In order for the defendant’s conviction of sexual battery to be upheld, the record must establish that the State proved beyond a reasonable doubt all the essential elements of the offense. La. R.S. 14:43.1 defines sexual battery as the |1(lintentional engaging in any of the following acts with another person, who is not the spouse of the offender, where the offender acts without the consent of the victim, or where the other person has not yet attained fifteen years of age and is at least three years younger than the offender: (1) the touching of the anus or genitals of the victim by the offender using any instrumentality or any part of the body of the offender; or (2) the touching of the anus or genitals of the offender by the victim using any instrumentality or any part of the body of the victim.
In the present case, the record reflects that the abuse began in December 2007 and ended in December 2009, when her parents learned of the sexual molestation. The victim testified that the defendant, “Tito”, would go into her room and touch her chest and “vagiva”, the part of the body where you pee. Additionally, using a gender neutral diagram, the victim circled the genital area and told Dr. At-zemis that “Tito” touched her in a bad way and hurt her. The record does not contain any evidence to refute the victim’s claim that the defendant sexually molested her or that he was the perpetrator.
As to the defendant’s failure to register, La. R.S. 15:542 outlines mandatory registration requirements for those categorized as sex offenders under La. R.S. 15:541 and child predators. One of the requirements is that whenever a sex offender changes his place of residence or vacates his current address of registration with the intent not to return, he must notify the local law enforcement agency of his new address within three days. La. R.S. 15:542.1.2. The defendant vacated the 1915 Bodinger Street residence on January 6, 2010, when Schmitt, his co-defendant, ordered him out of the house, put him on a bus to Kingsville, Texas, and told him never to return. Detective Hughes testified that the defendant had three days, or until January 10, 2010, to notify the NOPD of his new residence. As |nof January 11, 2010, the defendant had not notified the NOPD of his address, nor had he registered with the local authorities in Texas.
Based upon the testimony and evidence adduced at trial, the State produced evidence sufficient to support the defendant’s convictions.

ASSIGNMENT OF ERROR NUMBER 2

In a second assignment of error, the defendant argues that he was prejudiced by the trial court’s erroneous admission of other crimes evidence, specifically the evidence of his 1998 Florida conviction for the sexual battery of a twelve year old female. The defendant maintains that his prior conviction is dissimilar to the instant offense and occurred more than ten years earlier and at a different location.
Generally, evidence of other crimes committed by the defendant is inadmissible due to the “substantial risk of grave prejudice to the defendant.” State v. Prieur, 277 So.2d 126 (La.1973). Pursuant to La. C.E. art. 404(B)(1), evidence of other crimes, wrongs or acts are generally not admissible to prove character. The article, however, provides for exceptions to *880 this rule, which include admission for the purposes of proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident or when the evidence relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.
Another exception to the rule stated in La. C.E. art. 404(B)(1) is supplied by La. C.E. art. 412.2(A), which provides:
A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused’s commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its | ^bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.
Accordingly, pursuant to La. C.E. art. 412.2(A), evidence of a prior sexual offense indicating that the defendant has a “lustful disposition toward children” is admissible if it is relevant and if the probative value of the evidence outweighs its prejudicial effect.
In this case, the State proved the defendant’s lustful disposition toward children through the testimony of the victim and S.C. Both were under the age of thirteen when they were molested by the defendant. Defendant lived with or in the same apartment building as both victims and occupied a position of trust with respect to both victims. The evidence of the defendant’s 1998 sexual battery was properly admitted by the trial judge. See State v. Scoggins, 2010-0869 (La.App. 4 Cir. 6/17/11), 70 So.3d 145. As for the defendant’s contention that the single instance of his assaultive behavior toward S.C. was so remote in time as to have no probative value, remoteness in time, in most cases, is only one factor to be considered when determining whether the probative value of the evidence outweighs it prejudicial effect. Scoggins, supra. Generally, a lapse in time will go to the weight of the evidence, rather than to its admissibility. Id., citing State v. Jackson, 625 So.2d 146 (La.1993).
In this case, the probative value of other crimes evidence admitted out weighted its prejudicial value.

ASSIGNMENT NUMBER 3

In his third assignment of error, the defendant argues that the trial court abused its discretion in denying his motion to sever his trial from that of his codefen-dant on the basis that his co-defendant might implicate him at trial. He also | ^argues that the court erred , in denying his motion to sever the trial of the two counts against him.
La.C.Cr.P. art. 704 provides that jointly indicted defendants shall be tried jointly unless the State elects to try them separately, or the court, on motion of the defendant, and after contradictory hearing with the district attorney, is satisfied that justice requires a severance.
Whether justice requires a severance must be determined by the facts of each case. State v. Prudholm, 446 So.2d 729, 741 (La.1984). A defendant is not entitled to a severance as a matter of right, but the decision is one resting within the sound discretion of the trial court. Id. A denial of a motion to sever will not be overturned on appeal absent a clear abuse of discretion. Id.
A severance is necessary if the defenses of the co-defendants are mutually antagonistic to the extent that one co-defendant attempts to blame the other, causing each defendant to defend against *881 both his co-defendant and the State. Id. The defendant bears the burden of proof in such a motion. Mere unsupported allegations that defenses will be antagonistic are not sufficient to require a severance. Id. Furthermore, the fact that each defendant has pointed a finger at the other does not make defenses automatically antagonistic. Prejudice must be shown if defendants are to receive separate trials. State v. Williams, 416 So.2d 914, 916 (La.1982).
Severance is not mandated where the thrust of the co-defendant’s testimony is not to implicate the defendant as the perpetrator of the crime, but simply to deny his own involvement. State v. Dickerson, 579 So.2d 472, 478 (La.App. 3 Cir.1991).
|uIn this ease, Cavazos’ and Schmitt’s defenses were not antagonistic. Schmitt did not directly or indirectly, implicate Cavazos in the sexual battery, nor did she make a statement to the police or testify that she witnessed Cavazos sexually assault her child. The trial court did not abuse its discretion in denying the defendant’s motion to sever his trial from that of his co-defendant.
As to the defendant’s arguing error in the denial of his motion to sever the trial of the two counts against him, La. C.Cr.P. art. 493 provides:
Two or more offenses may be charged in the same indictment or information in a separate count for each offense if the offenses charged, whether felonies or misdemeanors, are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan; provided that the offenses joined must be triable by the same mode of trial.
La.C.Cr.P. art. 495.1 provides that if the defendant or the State is prejudiced by the joinder of offenses in a bill of information or at trial, “the court may order separate trials, grant a severance of offenses, or provide whatever other relief justice requires.”
Generally, “there is no prejudice and severance is not required if the facts of each offense are not complex, and there is little likelihood that the jury will be confused by the evidence of more than one crime.” State v. Lewis, 557 So.2d 980, 984 (La.App. 4 Cir.1990). The defendant has a heavy burden of proof when alleging prejudicial joinder of offenses, and he must make a clear showing of prejudice. State v. Lewis, 97-2854, p. 15 (La.App. 4 Cir. 5/19/99), 736 So.2d 1004, 1015.
In determining whether joinder of two or more offenses would result in prejudice, a court should consider: (1) whether the jury would be confused by the various counts; (2) whether the jury would be able to segregate the various charges |15and evidence; (3) whether the defendant would be confounded in presenting his various defenses; (4) whether the crimes charged would be used by the jury to infer a criminal disposition; and (5) whether, especially considering the nature of the charges, the charging of several crimes would make the jury hostile. Lewis, 97-2854, 736 So.2d 1004 (citing State v. Guccione, 96-1049, p. 12 (La.App. 5 Cir. 4/29/97), 694 So.2d 1060, 1066.)
In this case, the facts of each offense were distinct, simple and uncomplicated. The investigating officers who testified documented and distinguished each offense. There is no indication that the state’s presenting evidence of the crimes together confused the jury. There is no suggestion that the defendant’s right to present a defense as to either count was hindered. Nor is there anything in the *882 record to suggest the prosecution joined the offenses to show the defendant’s criminal propensity. There is no evidence of jury hostility caused by the joint trial of the two counts. The trial court was reasonable in finding that the defendant would not be unfairly prejudiced by the authorized joinder of offenses.
Given the facts in this case, the trial court did not abuse its discretion denying the defendant’s motion to sever the trial of the two counts against him.

ASSIGNMENT OF ERROR NUMBER 4

In this fourth assignment of error, the defendant complains that the trial court imposed an excessive sentence. In furtherance of his argument, the defendant contends the trial court failed to consider the La.C.Cr,P. art. 894.1 sentencing guidelines.
La. Const, art. I, § 20 explicitly prohibits excessive sentences; State v. Baxley, 94-2982, p. 4 (La.5/22/95), 656 So.2d 973, 977. Although a sentence is | ^within the statutory limits, the sentence may still violate a defendant’s constitutional right against excessive punishment. State v. Brady, 97-1095, p. 17 (La.App. 4 Cir. 2/3/99), 727 So.2d 1264, 1272. However, the penalties provided by the legislature reflect the degree to which the criminal conduct is an affront to society. Baxley, 94-2984 at p. 10, 656 So.2d at 979, citing State v. Ryans, 513 So.2d 386, 387 (La.App. 4 Cir.1987). A sentence is constitutionally excessive if it makes no measurable contribution to acceptable goals of punishment, is nothing more than the purposeless imposition of pain and suffering, and is grossly out of proportion to the severity of the crime. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 679. A sentence is grossly disproportionate if, when the crime and punishment are considered in light of the harm done to society, it shocks the sense of justice. Baxley, 94-2982 at p. 9, 656 So.2d at 979.
Louisiana jurisprudence dictates that the test to determine whether a sentence is excessive is two-pronged; the first prong is an examination of whether the trial court complied with La.C.Cr.P. art. 894.1. State v. Lobato, 603 So.2d 739, 751 (La.1992). Article 894.1 lists guidelines for courts during sentencing in criminal cases, such as taking aggravating or mitigating circumstances into consideration. La.C.Cr.P. art. 894.1. A trial court need not, however, specify each aggravating and/or mitigating factor as long as the record indicates that the 894.1 guidelines were adequately considered, because “the goal of the article is an articulation of a factual basis for the sentence rather than rigid or mechanical compliance with its provisions.” Lobato, 603 So.2d at 751 (citing State v. Lanclos, 419 So.2d 475 (La.1982)). Where the record clearly shows an adequate factual basis for the sentence imposed, remand is unnecessary even where there has |17not been full compliance with La. C. Cr. P. art. 894.1. State v. Lanclos, 419 So.2d 475, 477-78 (La.1982)
The defendant’s argument that the trial court failed to consider the La. C.Cr.P. art. 894.1 sentencing guidelines is disproved by the record.
Upon sentencing the defendant, the trial judge noted:
“... that the defendant is in need of correctional treatment. A lesser sentence would deprecate the seriousness of the defendant’s crime. The victim is a child ...”
Further, the judge said:
“Based on the facts from the trial in this case, you are a perpetual, constant sex offender of young children. The Court finds that the sentence would be the only sentence appropriate based on your *883 perpetration and continued perpetration of sex offenses on children.”
The record indicates a factual basis for the sentence imposed.
The second prong of the examination of whether a sentence is excessive involves a consideration of the particular circumstances of the case and the background of the defendant. Lobato, 603 So.2d at 751.
In this case, the record shows that the defendant’s prior crime was committed in Florida in 1998, resulting in his conviction in 2000 for lewd and lascivious act/sexual battery on a child under sixteen years of age for which he received a seven year sentence.
The defendant’s present conviction is for sexual battery of an eight year old female, under La. R.S. 14:43.1. He was adjudged a second felony offender based on the Florida sexual battery conviction and re-sentenced to sixty-five years at hard labor without benefits to be served concurrently with the sentence on the failure to register count.
11sUnder the 2009 Habitual Offender Law (La. R.S. 15:529.1(A)(2)(a)), if the second felony and the prior felony are sex offenses, the mandatory sentencing range is between one-half of the longest term for the conviction and not more than twice the longest term prescribed for a first conviction, without benefit of probation, parole, or suspension of sentence. At the time of commission of the offense in this case, the sentencing range was not less than twenty-five years nor more than ninety-nine years. Consequently, the defendant was exposed to a sentencing range of between 49-1/2 to 198 years as a second offender. His sentence of sixty-five years is a little more than the minimum sentence but below the mid-range of sentencing and substantially less than the maximum he was exposed to. Given the facts of this case and the physical and psychological injury the defendant inflicted on the victim, plus his prior conviction for the same offense on an earlier defenseless victim, the sentence is not excessive.
A conviction for failure to register as a sex offender carries a sentence of imprisonment at hard labor for two to ten years, without benefit of parole, probation, or suspension of sentence. La. R.S. 15:542.1.4. The defendant herein failed to note on his sex offender registration the fact that minor children lived in the residence he shared with Schmitt. Moreover, the evidence showed that the defendant moved to Texas after sexually assaulting the victim and failed to register as a sex offender in Texas.
After an evaluation of the weight of the evidence and the testimony as a whole, the maximum sentence imposed on the defendant for failing to register is not excessive.
| ASSIGNMENT OF ERROR NUMBER 5
In a final assignment of error, the defendant maintains that he did not receive effective assistance of counsel.
Ordinarily, an ineffective assistance claim is better addressed in an application for post-conviction relief filed in the trial court in which a full evidentiary hearing can be held. State v. Howard, 98-0064, p. 15 (La.4/23/99), 751 So.2d 783, 802. However, where the record is sufficient to permit a determination of counsel’s effectiveness at trial, the claims may be addressed on appeal. State v. Wessinger, 98-1234, p. 43 (La.5/28/99), 736 So.2d 162, 195; State v. McGee, 98-1508, p. 4 (La.App. 4 Cir. 3/15/00), 758 So.2d 338, 341.
In order to prevail, a defendant must establish that counsel’s performance was deficient and that the deficiency prejudiced him. Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Here, defendant has failed in his burden of proof.
*884 The defendant cites six instances evidencing that his trial counsel was ineffective: counsel’s failure:
1. to object to the repeated references to the child’s disclosure of molestation.
2. to object to the questioning of Schmitt about defendant’s marijuana conviction in Florida.
3. to obtain and introduce into evidence R.S.’s initial forensic interview, where she made no disclosure of sexual abuse.
4. to question why there was no door on R.S.’s bedroom.
5. to notify the court that defendant was being sentenced under the wrong section of the sexual battery statute.
6. to object in the multiple bill hearing to the fact that the record from the Florida conviction does not indicate that defendant was advised of his constitutional rights.
lanAlthough the defendant urges the foregoing events as counsel errors, he does not state how any of the instances prejudiced him. This omission is enough for this Court to deny his claim as the defendant bears the burden of proof on this issue. Nevertheless, as to number 1, in a sex abuse case, it is not unusual to hear the complaint of abuse not only by the child victim, but also repeated by her parents, doctors and the investigating detective. The damning evidence at trial was that R.S. testified unequivocally that defendant molested her, not that her statement was repeated by other witnesses throughout the trial.
Number 2, defendant’s reference to Schmitt’s testimony about his supposed prior marijuana conviction is disingenuous. Schmitt testified that she was completely unaware of defendant’s prior Florida sexual battery conviction. She claimed that the only Florida conviction she was aware of was for possession of marijuana.
Number 3, counsel’s failure to obtain a copy of R.S.’s initial interview in which she made no disclosure of sexual abuse is not noteworthy. R.S. did not say that she was not sexually assaulted; she simply did not disclose any sexual abuse. Detective Merricks testified that the victim said she “did not remember” the incident during the initial interview. The initial interview did not exculpate the defendant.
Number 4, the defendant’s assertion of error in not determining why R.S.’s room had no door is unimportant. The presence or absence of a door to the victim’s room played no part in the defendant’s conviction.
As to number 5, the defendant was sentenced under the correct section of the sexual battery statute; nothing in the record indicates otherwise.
121Finally, number 6, the defendant tries to mount a collateral attack against the Florida conviction. His avenue of redress is to directly attack the conviction in the Florida court which convicted him. The trial court herein was required to determine that in fact there was a conviction but not to go behind the conviction and review it for documentary completeness. At the hearing on the multiple bill, the State introduced a cert pack containing a copy of the June 29, 2000, Uniform Commitment to Custody from the Florida Department of Corrections bearing case no. 98-1283CF proving that the defendant’s conviction for sexual battery of a twelve year old female.
The defendant has failed to prove he suffered any prejudice as a result of the alleged incidents of incompetence on the part of his counsel.

CELESTE SCHMITT

In a sole assignment of error, the defendant argues the insufficiency of the evidence to support her convictions for cruel *885 ty to a juvenile and accessory after the fact.
The standard of review for the sufficiency of the evidence to uphold a conviction has been set out in Cavazos’ first assignment of error. For the sake of judicial economy, that standard will not be restated here.
Cruelty to juveniles is set forth in La. R.S. 14:93(A), and it provides that cruelty to juveniles is the intentional or criminally negligent mistreatment or neglect of a child whereby unjustifiable pain or suffering is caused to the child. The term “intentional” within the meaning of this statute, requires general criminal intent to cause a child unjustifiable pain and suffering. State v. Cortez, 96-859, p. 7 (La.App. 3 Cir. 12/18/96), 687 So.2d 515, 519, citing State v. Morrison, 582 So.2d 295 (La.App. 1 Cir.1991). Mistreatment as used in this statute means “abuse.” State v. Cortez, 687 So.2d at 519, citing State v. Comeaux, 319 So.2d 897, 899 (La.1975).
Criminal negligence exists when, although neither specific nor general criminal intent is present, there is such disregard of the interest of others that the offender’s conduct amounts to a gross deviation below the standard of care expected to be maintained by a reasonably careful man under like circumstances. La. R.S. 14:12.
In this case, Schmitt exposed R.S. to sexual abuse at the hands of Cavazos by allowing him to live in her house when she knew or with the exercise of minimal diligence should have known he was a convicted sex offender. Schmitt’s denial of any knowledge of Cavazos’ prior sexually as-saultive behavior is contradicted by the record. Not only was Schmitt present with Cavazos when he registered with the NOPD sex crimes unit in December 2007, but she paid his registration fee with a money order she purchased for the purpose. Schmitt was present when compliance officers came to her house for periodic checks on Cavazos. Although Schmitt testified that she did not know what the money order was for and that she did not speak with compliance officers, the trial judge found her testimony incredible. It is within the trier of fact’s sound discretion to make this credibility determination.
Schmitt next argues that even if she did know of Cavazos’ prior sexual battery conviction, that fact would be insufficient to support a conviction for cruelty to a juvenile because her decision to live with Cava-zos was simply a “bad judgment call”, which “falls woefully short of equaling intentional mistreatment or criminal negligence and, without more, does not give rise to a charge under [La. l^R.S. 14:93].” She cites State v. Cortez, 96-859 (La.App. 3 Cir. 12/18/96), 687 So.2d 515 for support; however, her reliance is misplaced.
The Third Circuit overturned Cortez’s conviction finding that the evidence established the injury was such that it did not require immediate treatment and was the type of injury that may not have been noticed or diagnosed by the average caregiver. The court also found it plausible that the motion perceived her son’s discomfort to be caused by his ear infection.[4]
Unlike Cortez, the defendant here knowingly allowed a convicted child molester to live in her home for two years with her two young daughters that were under the age of thirteen. Such behavior represents a gross deviation below the standard of *886 care expected to be maintained by a reasonably careful parent. That behavior caused harm upon a defenseless child. Thus, unlike Cortez, the facts of this case support a finding of general criminal intent; the facts also support a finding of criminal negligence.
La. R.S. 14:25 defines an accessory after the fact as “any person who, after the commission of a felony, shall harbor, conceal, or aid the offender, knowing or having reasonable ground to believe that he has committed the felony, and with the intent that he may avoid or escape from arrest, trial, conviction, or punishment.” In this case, Schmitt undeniably had reasonable grounds to believe that Cavazos committed a felony. She testified that Detective Merricks told her the results of R.S.’s interview with Dr. Atzemis, and that he was going to apply for an arrest warrant for Cavazos. In spite of this knowledge, Schmitt transported Cavazos to the bus station where he boarded a bus to Texas.
li^Viewing the evidence in the light most favorable to the prosecution, the State proved the essential elements of the crimes beyond a reasonable doubt. This assignment has no merit.

CONCLUSION

The convictions and sentences of both defendants are affirmed.
AFFIRMED

. Cavazos pled guilty and was sentenced to seven years in prison.

. The bill of information was amended on August 13, 2010, to change the charge to accessory after the fact.

.When questioned whether that body part does something, the victim responded it is where she pees.

. "It is clear that the young mother made a judgment call regarding the seriousness of the leg injury. Perhaps, she indeed exercised bad judgment. However, a bad judgment call falls woefully short of equaling intentional mistreatment or criminal negligence and, without more, does not give rise to a charge under this statute.” Id. at 522