649 So.2d 1230 (1995)
STATE of Louisiana, Plaintiff-Appellee,
v.
Marvin ETIENNE, Defendant-Appellant.
No. CR 94-910.
Court of Appeal of Louisiana, Third Circuit.
February 1, 1995.
*1231 John Phillip Haney, St. Martinville, for State of Louisiana.
Ken John Dohre, New Orleans, for Marvin Etienne.
Marvin Etienne, pro se.
Before LABORDE, YELVERTON, and COOKS, JJ.
YELVERTON, Judge.
Marvin Etienne was convicted of aggravated battery, in violation of La.R.S. 14:34, and illegal use of a weapon, in violation of La.R.S. 14:94. The defendant appealed the convictions based on three assignments of error. We affirm.
At about 11 p.m., November 16, 1991, Curtis Harper and a young woman, Tetra Johnson, who was apparently the defendant's girlfriend, were in a car together. The defendant and his friend, Ashley Thomas, saw the *1232 pair in the car and followed them to a house where the car stopped. The defendant and Thomas parked behind Curtis Harper's car. Harper and Ms. Johnson were inside the car, when the defendant approached and tapped on the passenger-side window with a gun. The defendant yelled for Ms. Johnson to get out of the car.
When Ms. Johnson opened the passenger door, the defendant pulled her out of the automobile. When Harper attempted to intervene, the defendant and his friend Thomas hit Harper and beat and kicked him into semiconsciousness. Nearby police heard what sounded like gunshots in the vicinity of the crime, and those who reported the crime reported hearing gunshots. Ms. Johnson then left with the defendant and Thomas. The defendant dropped Thomas off in the vicinity. Within a few minutes of the incident, Harper entered the house, bleeding from his forehead.
The authorities were alerted. Police stopped the defendant after a high-speed chase, arrested him and seized a nine-millimeter (9mm) pistol that was in the car. Ms. Johnson was also in the vehicle when police stopped it.

ASSIGNMENT OF ERROR NO. 1:
The defendant alleges that the evidence introduced in the trial below was insufficient to support his convictions on the aggravated battery and illegal use of weapons charges.
When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, rehearing denied, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); State ex rel. Graffagnino v. King, 436 So.2d 559, at 563 (La.1983); State v. Duncan, 420 So.2d 1105 (La.1982); State v. Moody, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore the appellate court should not second guess the credibility determination of the trier of fact beyond the sufficiency evaluations under the Jackson standard of review. See State ex rel. Graffagnino, supra, citing State v. Richardson, 425 So.2d 1228 (La.1983).
In order for the State to obtain a conviction, it must prove the elements of the crime beyond a reasonable doubt.
Aggravated battery is a battery committed with a dangerous weapon. La. R.S. 14:34. One of the definitions of battery is the intentional use of force or violence upon the person of another.
The illegal use of weapons statute, La.R.S. 14:94, can be violated when there is the intentional or criminally negligent discharging of any firearm where it was foreseeable that it might result in death or great bodily harm to a human being.
To prove the defendant guilty of aggravated battery, the State had to prove that he intentionally used a dangerous weapon to commit force or violence upon Harper. The illegal use of a weapon charge, in the circumstances of this case, required proof that the defendant intentionally or in a criminally negligent manner discharged a firearm in a manner wherein it was foreseeable that it might result in death or great bodily injury to Harper. Thus, each crime has an act element and an intent element that must be proven to convict the defendant.
As to the act element of the crimes, the State adduced testimony that the defendant had a gun in his hand when he approached and tapped the window of Harper's car. Tonya Ledet was inside the house when the incident occurred. She heard loud noises, including the defendant's voice. Looking through a window, she saw Harper and Tetra Johnson sitting inside the car, with the defendant tapping on the passenger-side window with a gun. Another occupant of the house, Chris Parish, pulled Ms. Ledet away from the window, and she did not see what happened afterwards. However, she could hear the voices of those outside, including Tetra Johnson saying, "Don't hit him, don't hit him." Ms. Ledet then heard shots.
Also, Ashley Thomas testified the defendant hit and kicked the victim, although he *1233 claimed the defendant was unarmed at the time. The examining physician testified the victim had injuries consistent with blows from a gun, although he acknowledged the injuries could have been caused by other hard objects. Some witnesses, including a police officer, said they heard gunshots in the area at the time of the battery, and other officers testified they responded to a call regarding gunshots in the area. Police testified that area residents told them a shooting had occurred at the crime scene. When the defendant was stopped by authorities, an unloaded gun was in plain view on the back seat. A partially-loaded clip was also recovered.
The evidence is clear that a battery occurred and the defendant had a weapon immediately before the battery and had it in his car shortly after the battery. The attending physician testified that Harper's injuries were consistent with a pistol-whipping. Also introduced into evidence was testimony concerning the victim's excited utterance that he was battered with a weapon. Under the Jackson standard, there was sufficient evidence for a rational jury to conclude beyond a reasonable doubt that the defendant committed a battery upon Harper, using a gun.
The evidence regarding the alleged discharge of the gun was likewise proved by sufficient evidence. Although the record is lacking direct evidence that the defendant fired a gun during the commission of the battery, there is circumstantial evidence that he did so. Circumstantial evidence may be used to support a conviction if it excludes every reasonable hypothesis of innocence. La.R.S. 15:438.
Incorporating this rule under the Jackson standard, an appellate court must determine whether viewing the evidence in the light most favorable to the prosecution, a reasonable trier of fact would have concluded beyond a reasonable doubt that every reasonable hypothesis of innocence had been excluded. State v. Honeycutt, 438 So.2d 1303 (La.App. 3rd Cir.), writ denied, 443 So.2d 585 (La.1983); State v. Morris, 414 So.2d 320 (La.1982).
In addition, when circumstantial evidence forms the basis of the conviction, such evidence must consist of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Shapiro, 431 So.2d 372 (La.1982). See also State v. Chism, 436 So.2d 464 (La.1983).
Applying this standard to the present case in relation to the discharge of the weapon, every reasonable hypothesis of innocence was excluded beyond a reasonable doubt. Two police officers testified that they heard gunfire in the area at the time of the incident. Tonya Ledet testified that she saw the defendant by the car with a gun in his hand, and after she was pulled away from the window she heard gunshots. The "excited utterances" attributed to Harper combine with this evidence to strongly indicate the defendant fired the weapon. Chris Parish also confirmed these facts. In view of the fact that the defendant had a gun in his hand, Ms. Ledet's testimony, and the victim's excited speech, the reasonable conclusion is that the defendant fired his weapon during the incident. Gunshots were heard in the area at the time of the altercation. There was no evidence that anyone else was firing a weapon in the area at that time, or that a vehicle was backfiring. Officers who saw a street sweeper nearby did not observe it backfiring, and only speculated that it had because they did not know someone in the area actually had a weapon. Viewing the evidence in the light most favorable to the state, every reasonable hypothesis of innocence was excluded as to the discharge of the weapon.
Aggravated battery is a general intent crime. Illegal use of a weapon requires either general intent or criminal negligence. It is well-established that intent can be inferred from the circumstances of the case and the defendant's actions. State v. Yarbrough, 596 So.2d 311, 314 (La.App. 3 Cir.), writ denied, 599 So.2d 317 (La.1992). The facts are sufficient for a finding of general intent on both charges.
The insufficiency claim is without merit.

ASSIGNMENT OF ERROR NO. 2:
By this assignment, the defendant alleges that the trial court erred in admitting *1234 Harper's hearsay statements over the defendant's objections. The statements complained of were admitted under the "excited utterance" exception to the hearsay rule, La. Code of Evid. art. 803(2). "Excited utterances" are dealt with at La.Code Evid. art. 803(2):
The following are not excluded by the hearsay rule, even though the declarant is available as a witness:
(2) Excited utterance. A statement relating to a startling event or condition made while the declarant was under the stress of excitement caused by the event or condition.
In State v. Henderson, 362 So.2d 1358, 1362 (La.1978), the Louisiana Supreme Court outlined two requirements in determining the admissibility of evidence under the excited utterance hearsay exception, and delineated several factors to assist the courts in determining whether the requirements are met. The court stated:
There must be an occurrence or event sufficiently startling to render normal reflective thought processes of an observer inoperative. Additionally, the statement of the declarant must have been a spontaneous reaction to the occurrence or event and not the result of reflective thought. State v. Smith, supra; see, C. McCormick, Evidence, § 297 at 704 (2d ed. 1972).
Many factors enter into determining whether in fact the second requirement has been fulfilled and whether a declarant was at the time of an offered statement under the influence of an exciting event. Probably the most important of these is the time factor. In this connection the trial court must determine whether the interval between the event and the statement was long enough to permit a subsidence of emotional upset and a restoration of a reflective thought process. Several additional factors which may indicate that the statement was the result of reflective thought, but which do not automatically justify exclusion, are as follows: Evidence that the statement was self-serving or made in response to an inquiry; Expansion of the excited utterance beyond a description of the exciting event into past facts or the future; Proof that the declarant performed tasks requiring reflective thought processes between the event and the statement. See, State v. Smith, 285 So.2d 240 (La.1973); C. McCormick, Evidence, § 297 at 705, et seq. (2d ed. 1972); G. Pugh, Louisiana Evidence Law, at 515 (1974), at 208 (Supp.1976); Comment, Excited Utterances and Present Sense Impressions as Exceptions to the Hearsay Rule in Louisiana, 29 La.L.Rev. 661 (1969).
In the case before us witness Michael Borque, a police officer, testified that he and other officers arrived on the scene in response to reports of shooting in the area. The officers arrived at the house within approximately five minutes of the call. They knocked on the front door and were let in by the occupants. The three people inside the house appeared hysterical and approached Officer Borque and the other officers with several excited statements. Harper told about the shooting and the beating. While they were talking one of the officers present called an ambulance for Harper. Considering that only five to ten minutes had passed since the incident, and the apparent fear and agitation observed by Officer Borque, this testimony clearly fit within the excited utterance exception to the hearsay rule and was properly admitted into evidence. This assignment is without merit.

ASSIGNMENT OF ERROR NO. 3:
By this assignment, the defendant alleges it was error for the trial court to admit the impeachment testimony of police officers Melancon and Lewis after State's witness Ashley Thomas admitted making prior inconsistent statements.
The controversy regarding Mr. Thomas's testimony arose during direct examination:
Q. And what did Marvin do once y'all parked there at the driveway?
A. Well, he got down and walked up to the car on the passenger side. He asked Tetra to get out the door, get out the car. And Tetra told him, no. So he repeated hisself. And then
Q. Well, let's back up. Did Mr. Etienne get out of the car with anything in his hand?
A. At theno.
*1235 Q. No?
A. No.
Q. Okay. Did he go back to the car?
A. No.
Q. He never went back to the car?
A. Notnot until we left.
Q. Okay. You recall talking to me in the office yesterday?
A. Correct.
Q. Okay. You recall telling me that he got out of the car with a Tech-Nine?
A. No, sir.
BY MR. McHUGH: Now, wait a minute. Is he impeaching his own witness?
BY MR. HANEY: It looks like that's about what I'm fixing to do, Your Honor. And I'm going to have toI notify the court I'm going to have to call Mr. McHugh as a witness, `cause he was present and heard this entire conversation. So I just notify the court and Mr. McHugh he will be a witness in this case.
Q. You recall having a conversation with me?
A. Yes, I have.
Q. Do you recall Mr. McHugh being there?
A. Yes, sir.
Q. Okay. You recall me asking you to tell the truth about what was going on in this thing?
A. Yes, sir.
Q. Okay. Do you recall telling me that he got out with his Tech-Nine.
A. No, sir. Q. You don't recall saying that?
A. No, sir.
Q. You don't recalldo you recall telling me anything about this Tech-Nine?
A. You asked me if I see something that looked like that on the picture. I said I seen it before.
Q. Okay. I'll mark this as State's Exhibit 3. This is a photograph I showed you?
A. Yes, Sir.
Q. Okay. You said you'd seen that before?
A. Yes, sir.
Q. What is that?
A. That's the gun.
Q. What kind of gun?
A. I don't know what kind it is, but I know it's a gun.
Q. One just like this?
A. Yeah.
Q. You saw that before, huh?
A. Yes, sir.
Q. Did you see it that night?
A. No, sir.
Q. It's your testimony under oath
A. Yes, sir.
Q. under oath, that you never saw that weapon that night?
A. Yes, sir.
Q. Now did you tell me you saw it that night and that Marvin Etienne got out of his vehicle with that in his hand?
A. I don't recall, sir.
Q. You don't recall?
A. No, sir.
Q. You recall Mr. McHugh being there?
A. I recall he being there.
Q. Okay. And you don't recall anything about saying this weapon had been removed by Marvin Etienne, and that he went up to the passenger side of the car?
A. No, sir.
Q. And Tetra was there and she wouldn't get out, and he kept beating on it, yelling for her to get out.
A. Well, like I say, he knocked on the glass.
Q. Did he knock on it with this?
A. No, sir.
Q. What did he knock on it with?
A. With his hands.
*1236 On agreement of counsel, the perjury statute was read to Thomas. He invoked his Fifth Amendment rights, but on cross-examination by the defense counsel, he admitted his prior inconsistent statement:
Q. Now did you tell us that that weapon was involved when we talked to you day before yesterday or yesterday?
A. Well, look
Q. I mean, I want you to tell this jury the truth.
A. Okay. Listen, when Mr. Haney told me that he could, you know, put some good words in there for me and like he told me, he hold the papers and he hold the cards, understand? And he could, you know, persuade the judge where that, you know, that he feel that I have changed, understand? And if that's what he wanted to hear, you know, I know this is what he wanted to hear; that's what he wanted to hear, okay? Like he told me, Marvin, heMarvin, he gets away with a lot of things. You understand? He told me that he wanted Marvin and in order for him to get Marvin, you know, he'd need my help. Understand? And, like I said, he told me he hold the cards in my case, you know. And he hold the papers. He could persuade the judge, he could persuade the judge that II'm a changedI was a changed person. And I was just trying to impress him, okay? I told him a lot of things that wasn't true.
Q. That was before I got there?
A. Correct.
Q. When I got there, you did tell him that you saw Marvin use this weapon?
A. Correct.
Q. Now you're changing your story, is that correct?
A. Yes, sir.
Q. You had seen that weapon before?
A. I have seen it before. But like I'm telling you now
Q. Where did you see it?
A. I have seen it one time. Marvin and I, we went fishing. And he hadhe had brought it with him.
During Officer Melancon's testimony, the defendant failed to make an objection based on Mr. Thomas's admission that he had made a prior inconsistent statement. The defendant's only objection was based on a non-responsive answer. Likewise, during Officer Lewis' direct testimony, the defendant failed to object at all. This assignment of error lacks merit.
The defendant's convictions are affirmed.
AFFIRMED.