NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

13-49

STATE OF LOUISIANA

VERSUS

CHRISTOPHER JOSEPH SILLMON

\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 10-1967
HONORABLE EDWARD LEONARD, JR., DISTRICT JUDGE

\*\*\*\*\*\*\*\*\*\*

PHYLLIS M. KEATY
JUDGE

\*\*\*\*\*\*\*\*\*\*

Court composed of J. David Painter, Shannon J. Gremillion, and Phyllis M. Keaty, Judges.

AFFIRMED, RENDERED, AND
REMANDED WITH INSTRUCTIONS.

Alfred F. Boustany, II
Attorney at Law
Post Office Box 4626
Lafayette, Louisiana 70502
(337) 261-0225
Counsel for Defendant/Appellant:
    Christopher Joseph Sillmon

**J. Phillip Haney**
**District Attorney**
**Angela B. Odinet**
**Assistant District Attorney**
**St. Martin Parish Courthouse**
**415 Main Street**
**St. Martinville, Louisiana  70582**
**(337) 394-2220**
**Counsel for Appellee:**
      **State of Louisiana**

**KEATY, Judge.**

Defendant, Christopher Joseph Sillmon, was charged by bill of information with possession of a firearm by a convicted felon, a violation of La.R.S. 14:95.1; criminal trespass, a violation of La.R.S. 14:63; and aggravated assault, a violation of La.R.S. 14:37. The trial proceeded only on the firearm-related charge.[1] On February 14, 2012, a jury found Defendant guilty as charged. Thereafter, the State filed a bill alleging that Defendant was a habitual offender. On June 19, 2012, the trial court adjudicated Defendant a second habitual offender and sentenced him to fifteen years at hard labor. Defendant now appeals his conviction. For the following reasons, we affirm Defendant's conviction for possession of a firearm by a convicted felon. Counts two and three of the bill of information are severed from this appeal and remanded to the trial court for disposition.

## FACTS

In the early morning hours of October 17, 2010, Chrissy Wesley was delivering newspapers in a rural portion of Iberia Parish. She noticed a white car parked near a field and an abandoned house. She passed it, delivered some newspapers along a side road, and then came back to the main road. While putting newspapers into roadside delivery boxes, she noticed a man pointing a gun at her. According to Wesley, he was "a tall black man" with a "windbreaker type jacket." She screamed, then drove away at a high rate of speed and called 911 on her cell phone. A deputy met her at a nearby convenience store and took her statement.

Meanwhile, other deputies responded to the original scene and found a white car registered to someone named Billy Sillmon. Defendant, an African-American male, called out "hey," and advanced from beside a nearby residence. He was

---

[1] The record does not show the disposition of the two remaining charges.

wearing a windbreaker. Deputies questioned him about the incident with Wesley and about the gun. He denied any knowledge of either. Deputies knocked on the door of the residence, but nobody answered. After going to the backyard, they found a gun under the house and sent a police dog to retrieve it because it was difficult to reach. They also found a loaded magazine near the house. The gun and magazine were near the same side of the house from which Defendant had approached. Deputies placed Defendant under arrest.

## DISCUSSION

### *Errors Patent*

In accordance with La.Code Crim.P. art. 920, all appeals are reviewed by this court for errors patent on the face of the record. After reviewing the record, we have discovered several errors patent.

There is a misjoinder of offenses in the bill of information. The bill of information charged Defendant with count one, possession of a firearm by a convicted felon; count two, criminal trespass; and count three, aggravated assault. Louisiana Code of Criminal Procedure Article 493 provides for the joinder of offenses in a single bill under limited circumstances if the offenses joined are triable by the same mode of trial. Possession of a firearm by a convicted felon is triable by a jury of twelve jurors, and at least ten must concur to render a verdict. La.Code Crim.P. art. 782. Counts two and three are misdemeanors and are triable by a judge without a jury. La.Code Crim.P. art. 779. Therefore, counts two and three were improperly joined with count one. However, Defendant did not file a motion to quash the bill of information on the basis of misjoinder of offenses, as required by statute. *See* La.Code Crim.P. art. 495. Thus, review of this error is waived.

2

Next, since counts two and three are misdemeanors, the proper mode of appellate review for these offenses is an application for writ of review rather than an appeal. *See* La.Code Crim.P. art. 912.1. Louisiana Code of Criminal Procedure Article 819 provides: "If there is more than one count in an indictment, the jury must find a verdict as to each count, unless it cannot agree on a verdict as to a count."

Information from the district court clerk of court's office indicates that the record contains no evidence regarding the disposition of counts two and three. Accordingly, we sever the misdemeanors from this appeal and remand the charges to the trial court for a proper disposition of counts two and three. *See State v. Hypolite*, 04-1658 (La.App. 3 Cir. 6/1/05), 903 So.2d 1275, *writ denied*, 06-618 (La. 9/22/06), 937 So.2d 381.

## *Assignment of Error Number One*

In his first assignment of error, Defendant argues that the State's evidence was insufficient to support his conviction. The analysis for such claim is well-settled:

> When the issue of sufficiency of evidence is raised on appeal, the critical inquiry of the reviewing court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, *rehearing denied*, 444 U.S. 890, 100 S.Ct. 195, 62 L.Ed.2d 126 (1979); *State ex rel. Graffagnino v. King*, 436 So.2d 559 (La.1983); *State v. Duncan*, 420 So.2d 1105 (La.1982); *State v. Moody*, 393 So.2d 1212 (La.1981). It is the role of the fact finder to weigh the respective credibility of the witnesses, and therefore, the appellate court should not second guess the credibility determinations of the triers of fact beyond the sufficiency evaluations under the *Jackson* standard of review. *See State ex rel. Graffagnino*, 436 So.2d 559 (*citing State v. Richardson*, 425 So.2d 1228 (La.1983)). In order for this Court to affirm a conviction, however, the record must reflect that the state has satisfied its burden of proving the elements of the crime beyond a reasonable doubt.

*State v. Kennerson*, 96-1518, p. 5 (La.App. 3 Cir. 5/7/97), 695 So.2d 1367, 1371.

Defendant was convicted of possession of a firearm by a convicted felon.

The controlling statute is La.R.S. 14:95.1, which states, in pertinent part:

> A. It is unlawful for any person who has been convicted of a crime of violence as defined in R.S. 14:2(B) which is a felony . . . , to possess a firearm or carry a concealed weapon.
>
> . . . .
>
> D. For the purposes of this Section, "firearm" means any pistol, revolver, rifle, shotgun, machine gun, submachine gun, black powder weapon, or assault rifle which is designed to fire or is capable of firing fixed cartridge ammunition or from which a shot or projectile is discharged by an explosive.

Defendant first argues that the State failed to prove the object at issue was a firearm. He acknowledges that evidence custodian Casey Bergeron testified it was a gun but argues Bergeron was not a firearms expert and, thus, was not qualified to identify the weapon. We note, however, that other deputies described the item in question as a gun or firearm. As will be discussed in the next assignment of error, the weapon was not formally introduced into evidence during the State's case-in-chief. However, it was marked for evidence and shown in open court, and the State introduced pictures of the weapon and magazine depicting how they appeared at the scene.

> A law officer may testify as to matters within his personal knowledge acquired through experience without first being qualified as an expert. LSA-C.E. art. 701; *State v. Moses*, 367 So.2d 800, 805 (La.1979); *State v. Lowery*, 609 So.2d 1125, 1128 (La.App. 2 Cir.1992), *writs denied* 617 So.2d 905 (1993); *State v. Digilormo*, 505 So.2d 1154, 1157 (La.App. 3 Cir.), *writ denied*, 511 So.2d 1153 (1987).

*State v. Kestle*, 07-1573, p. 9 (La. 12/2/08), 996 So.2d 275, 280 (footnote omitted).

All of the deputies who testified, including the evidence custodian, were qualified

to identify the object in question as a firearm. Thus, this portion of Defendant's argument fails.

Defendant next argues that the State failed to prove he possessed the weapon. As indicated above, Defendant did not have actual possession of the weapon when deputies arrived at the scene. Of course, the man that Wesley saw had actual possession of a weapon, but as Defendant notes, she was able to identify him only by way of his jacket. She could not identify his face. Various deputies testified they were alerted to a suspect wearing a red, white, and black jacket, the same colors Defendant was wearing when he was found at the scene. However, neither Wesley's 911 call nor her initial statement included the jacket's colors. She acknowledged this fact about her statement. The jury heard a recording of the 911 call. Thus, Defendant argues that the case lacked proof beyond a reasonable doubt that Defendant was the same man that Wesley saw holding a gun.

Defendant also argues that the State failed to prove he had constructive possession of the weapon. He points out that it was far enough under that house that it apparently could not be easily reached by a human.[2] Also, no witness saw him throw it under the house. Further, he notes there was no forensic evidence, such as DNA or fingerprinting, to link him to the weapon.

Defendant cites the settled principle that mere presence in an area does not establish constructive possession of an item in that area. He also cites the rule of circumstantial evidence codified in La.R.S. 15:438: "The rule as to circumstantial evidence is: assuming every fact to be proved that the evidence tends to prove, in

---

[2] As previously noted, a police dog retrieved the pistol.

order to convict, it must exclude every reasonable hypothesis of innocence."[3] Defendant hypothesizes that the State's evidence allowed the possibility that he rode to the scene with the owner of the car, Billy Sillmon, who could have been the person Wesley saw holding a gun. Further, he speculates that Billy Sillmon, the car's owner, could have left the area or hidden by the time deputies arrived.

We note the following analysis by the supreme court:

> Here the state has presented evidence that the defendant was present in the residence (where Jessica Beals lived) at the time the drugs were discovered and that he was closer than Jessica Beals was to some of the drugs at the time the police entered the residence. On the other hand, once the suppressed evidence is discounted, the prosecution has presented no evidence to show that Walker knew or had reason to know that the drugs were present on the premises. Whether Walker was often present at the Plank Road residence and whether he had been there for an extended period of time on the afternoon in question is a matter of speculation. There was no evidence that the residence was frequented by drug users or that anyone other than Jessica Beals had access to the residence and its contents. Testimony of the searching officers indicates that no drugs were in open view in the apartment. Only the phenmetrazine tablets, which were subsequently suppressed, were found on the defendant's person. The evidence fails to prove that Walker exercised control over any of the drugs seized except for the tablets taken from his pocket.

*State v. Walker*, 369 So.2d 1345, 1346-47 (La.1979).

In the present case, Wesley saw an African-American male in a jacket holding a gun at approximately 1:30 a.m. She called 911 via her cell phone, and deputies were dispatched quickly. Lieutenant Arthur Elmer indicated that he responded to the scene between 1:30 a.m. and 1:40 a.m. and that Deputy Anthony Solano was already there. Defendant was alone near a house whose residents were not present. As mentioned earlier, it was a rural area. A fully-loaded magazine was on the ground near the back of the house, and a weapon was under the house.

---

[3] In his brief, Defendant mistakenly cites the statute as La. R.S. 14:438.

6

Both were on the same side of the house where Defendant was first seen. The mud on the gun was not caked or dried, and there was no rust on the weapon. Elmer testified from his own experience that rust would begin to show on such a weapon if it were left out more than a day. Also, the circumstantial case presented through the deputies was accompanied by Wesley's testimony. Although she frankly admitted she could not remember the gunman's face, she remembered his jacket; Defendant was found in the same type of jacket.

At the scene, Defendant explained his presence in the area by stating he was looking for his girlfriend, who might have been with another man. This explanation, however, has little bearing on the ultimate issue.

The present case is distinguishable from *Walker*, which addressed a situation in which a person other than the defendant was close by and could have possessed the contraband at issue. Deputies found Defendant alone in a rural area at approximately 1:30 a.m. within minutes of Wesley's reporting a man in the same type of jacket holding a gun. He emerged from the side of an unoccupied house; deputies found a loaded pistol magazine near the back steps and a pistol under the house on the same side from which he was first seen. Thus, it was reasonable to conclude that Defendant was the same man Wesley had seen in actual possession of the gun minutes before deputies arrived on the scene.

As for Defendant's argument that Billy Sillmon, the registered owner of the car, could have been the true gunman and could have escaped or hidden, we conclude that the facts already recited make such a scenario highly unlikely. Coupled with the testimony that deputies thoroughly searched the area, those facts render Defendant's hypothesis unreasonable.

7

In an earlier example of applying logic to a defendant's hypothesis of evidence, the court explained:

> [T]he reasonable conclusion is that the defendant fired his weapon during the incident. Gunshots were heard in the area at the time of the altercation. There was no evidence that anyone else was firing a weapon in the area at that time, or that a vehicle was backfiring. Officers who saw a street sweeper nearby did not observe it backfiring, and only speculated that it had because they did not know someone in the area actually had a weapon. Viewing the evidence in the light most favorable to the state, every *reasonable* hypothesis of innocence was excluded as to the discharge of the weapon.

*State v. Etienne*, 94-910, pp. 4-5 (La.App. 3 Cir. 2/1/95), 649 So.2d 1230, 1233, *writ denied*, 95-544 (La. 6/23/95), 656 So.2d 1012.

For the reasons discussed, this assignment lacks merit.

## *Assignment of Error Number Two*

In his second assignment of error, Defendant argues that the lower court erred by allowing the State to enter the weapon into evidence after it had already closed its case-in-chief. We note the following colloquy:

BY MR. ODINET:

> Just for the record we would note the firearm that was identified as State's Exhibit 2, which the witnessed [sic] all referred to and testified and identified, I apparently forgot to say the magic word before I rested and offer, file and introduce it into evidence it, I move to offer, file and move to introduce it.

BY MR. BURTON:

> Your Honor, I object to it directly. He did not do it and therefore we object.

BY THE COURT:

> Okay and gentlemen, I'm not sure what the law is on that issue so I'm having, Jill, my law clerk, do a little bit [of] research on that before I rule.

BY MR. ODINET:

> Yes, sir.

8

BY MR. BURTON:

Yes, sir, all right.

(Discussion at the bench ends.)

. . . .

BY THE COURT:

Let's go back on the record. Everybody have a seat please.

Back on the record. The issue is whether or not the State may introduce evidence after having closed its case and after having the benefit of some research the Court will allow that evidence to be introduced. First of all, it was discussed at length during the case, the State's case and on cross examination and the Court finds that to allow the introduction of the evidence after the State rests is in the discretion of the Court and the Court will allow it.

BY MR. BURTON:

Note my objection for the record, Judge.

BY THE COURT:

Yes.
You want to make your motion?

BY MR. ODINET:

Your Honor, the State's going to offer, file and introduce State's Exhibit Number, let me get the number right, Number 2, which is the firearm which was identified by Deputy Comeaux and Deputy Solano.

BY THE COURT:

All right, that will be admitted over the objection of the defense.

Defendant cites no jurisprudence other than a case which stated:

Defendant Bonanno asserts that the court erred in allowing the state to reopen its case after resting. After the defense rested, the state announced it had no rebuttal to offer. The hour was late, and the court recessed the trial at that time. The next day, when the proceedings resumed, the state moved to reopen its case and present rebuttal. The

court permitted this over strenuous defense objection. Under the circumstances present, the court did not abuse the discretion vested in it by Article 765(5) to permit the introduction of additional evidence prior to argument. The defense made no showing that the state acted as it did in order to prejudice defendant; there was no request for a recess or other relief which would have indicated the defense perceived that prejudice resulted when the state misled it into believing that the presentation of evidence had concluded. This assignment lacks merit.

*State v. Bonanno*, 373 So.2d 1284, 1293 (La.1979). Relying on the same case, the State argues the trial court did not abuse its discretion in admitting the gun. Viewing the trial court's reasons in light of *Bonanno*, we find that it did not abuse its discretion. Therefore, the assignment lacks merit.

### DECREE

Defendant's conviction of possession of a firearm by a convicted felon is affirmed. Counts two and three of the bill of information filed by the State are severed from this appeal and remanded to the trial court for disposition.

**AFFIRMED, RENDERED, AND REMANDED WITH INSTRUCTIONS.**

This opinion is NOT DESIGNATED FOR PUBLICATION.
Uniform Rules—Courts of Appeal, Rule 2–16.3.

10